**Vince ANGELES and Evette**
**Angeles, Respondents,**

v.

**Raymond LARSON and Jenny Larson,**
**Appellants/Cross–Respondents,**

v.

**Aquatic Enterprises, d/b/a Pool**
**Pros, Cross–Appellant.**

**No. ED 89869.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 8, 2008.

Susan Marie Herold, St. Louis, David T. Butsch, Clayton, MO, for Cross-Appellant.

Timothy P. Philipp, Maryland Heights, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Raymond and Jenny Larson ("the Larsons") appeal from the judgment against them and in favor of Vince and Evette Angeles ("the Angeleses") for $7,500 on the claim that the Larsons negligently changed the contour of their property and caused water to flow onto and damage the Angeleses' property as a result of the construction of the their swimming pool by Aquatic Enterprises, Inc., which does business as Pool Pros ("Pool Pros").[1] Pool Pros cross-appeals from the same judgment which found them liable to the Larsons as a third-party defendant in the amount of $7,500 for negligently constructing the Larsons' pool in such a manner as to change the contour of their property causing water to flow onto and damage the Angeleses' property. We reverse and remand.

The Larsons and Angeleses own adjacent properties in St. Charles County. Specifically, the Larsons' back yard abuts the Angeleses' back yard. The Larsons hired Pool Pros to install a swimming pool in their back yard. The Angeleses contend the pool's installation led to changes in the surface water flow in the Angeleses' back yard. Further, the Angeleses main-

tain this altered water flow caused their basement and back yard to retain water and caused them to sustain damage to their property.

On August 22, 2006, the Angeleses filed their first amended petition against the Larsons. The Angeleses' petition contained counts for negligence, nuisance, and negligence per se. All of the counts stemmed from the Larsons' installation of the swimming pool and the alleged changes in water flow.

Subsequently, the Larsons filed an action against third-party defendant, Pool Pros. The Larsons alleged Pool Pros breached its duty to construct their pool in a workmanlike manner and in accordance with all applicable laws by improperly constructing the pool so that it altered the water flow onto the Angeleses' property. The Larsons also contended that if a judgment was rendered against them on the Angeleses' petition, the Larsons should receive a like judgment against Pool Pros for contribution of Pool Pros' percentage of fault or negligence.

The Larsons and Pool Pros both motioned for directed verdicts at the close of the Angeleses' evidence and at the close of all evidence. All of these motions were denied.

On March 16, 2007, the jury found the Larsons were negligent by changing the contour of their property and causing water to flow on the Angeleses' property and the jury found this negligence caused damage to the Angeleses in the amount of $7,500. Further, the jury found in favor of the Larsons on their third-party claim against Pool Pros, and assessed the Larsons' damages at $7,500.

On April 17, 2007, the trial court entered its judgment in accordance with these jury

---

1. The Angeleses did not file a respondent's brief or otherwise participate in this appeal.

verdicts. The trial court also assessed $88 in costs to Pool Pros.

On May 2, 2007, Pool Pros filed a motion for new trial pursuant to Rule 78.07. On May 21, 2007, the Larsons filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. On May 23, 2007, the trial court entered a judgment finding that both of the motions for new trial were untimely because the jury returned a verdict on March 16, 2007, thereby entering judgment under Rule 78.04. As for the Larsons' motion for judgment notwithstanding the verdict, the trial court found it was untimely because more than thirty days had passed between the entry of judgment under Rule 72.01(b) on March 16, 2007 when the jury returned its verdict and the filing of the motion. This appeal follows.

■ In their first point, the Larsons argue the trial court erred in submitting the Angeleses' verdict directing instructions, Instructions Number 7 and 13, because the case concerned the alleged diversion of surface waters, which requires a nuisance instruction.

■ Initially, we note that the Larsons included this claim in their motion for judgment notwithstanding the verdict or for a new trial; however, that motion was untimely filed.[2] Thus, this claim of error is not properly preserved. *See* Rule 78.07; *and Holloway v. Cameron Community Hosp., Inc.,* 18 S.W.3d 417, 424 (Mo.App. W.D.2000). However, Rule 84.13(c) provides "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice

has resulted therefrom." Plain error is facially evident, obvious, and clear. *CAD-CO, Inc. v. Fleetwood Enterprises, Inc.,* 220 S.W.3d 426, 433 (Mo.App. E.D.2007). While relief under the plain error standard is rarely granted in civil cases, it is reserved for those situations in which hatred, passion, or prejudice has been engendered, resulting in manifest injustice or a miscarriage of justice. *Id.* In this case, we will exercise our discretion to review the Larsons' claim for plain error.

■ Rule 70.02(b) states that when MAI is applicable in a particular case, such instruction shall be given to the exclusion of any other on the same subject. It has been the policy of the courts to require strict compliance with the requirements of MAI. *Dubinsky v. U.S. Elevator Corp.,* 22 S.W.3d 747, 753 (Mo.App. E.D.2000). In general, when an MAI is applicable, its use is mandatory and any deviation from or unnecessary modification of the applicable MAI is "presumptively prejudicial." *Id.*

The Larsons argue Instruction Numbers 7 and 13 improperly submitted the issues of negligence and negligence per se to the jury. Instruction Number 7 provided:

Your verdict must be for [the Angeleses] if you believe:

First, [the Larsons] changed the contour of land without an approved erosion and storm water run-off plan and permit in violation of O'Fallon Municipal Ordinance 520.020, and

Second, as a direct result of such conduct, plaintiffs sustained damage.

The other instruction at issue in this case, Instruction Number 13, read:

Your verdict must be for [the Angeleses] if you believe:

---

2. The trial court entered its judgment on April 17, 2007. The Larsons filed their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on May 21, 2007. Thus, this motion was filed more than thirty days after the trial court entered its judgment, and it is untimely according to Rules 72.01(b) and 78.04.

First, [the Larsons] changed the contour of their real estate and caused water to flow on [the Angeleses'] real estate; and

Second, [the Larsons] were thereby negligent; and

Third, such negligence directly caused or directly contributed to cause damage to [the Angeleses].

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful person would use under the same or similar circumstances.

At the instruction conference, the Larsons objected to the submission of Instruction Numbers 7 and 13 on the ground that rather than the negligence per se and negligence theories therein, MAI provides a more particular instruction for nuisance, MAI 22.06.[3] The Larsons maintain that the only proper verdict directing instruction for a claim alleging the improper diversion of surface waters is MAI 22.06, which requires a finding that a defendant's use of his or her property is unreasonable.

The Larsons contend the Missouri Supreme Court has held an invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water is to be analyzed as a form of nuisance. *Heins Implement Co. v. Missouri Highway & Transp. Com'n*, 859 S.W.2d 681, 689 (Mo. banc 1993). Thus, "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Id.* Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct. *Id.* Liability arises when the defendant's conduct is either: (1) intentional and unreasonable; or (2) negligent, reckless, or in the course of an abnormally dangerous activity. *Id.* In other words, a landowner has a duty to use his or her land to avoid needlessly or negligently injuring by surface water adjoining lands owned by others or in the breach thereof to pay for the resulting damages. *Id.* at 690.

In *Heins Implement Co.*, the court rejected the common enemy doctrine[4] in favor of the rule of reasonable use. *Klokkenga v. Carolan*, 200 S.W.3d 144, 154 (Mo.App. W.D.2006). The rule of reasonable use makes obsolete the negligence and trespass nomenclature in cases involving the diversion of surface waters, because the concepts of negligence and trespass are merged into, and made subject to, the rule of reasonable use. *Thomas v. City of Kansas City*, 92 S.W.3d 92, 98 (Mo.App. W.D.2002).

■ The court has clearly stated interference with the flow of surface water is to

---

3. MAI 22.06 reads:
   Your verdict must be for plaintiff if you believe:
   First, plaintiff used his property as a residence, and
   Second, (*here describe nuisance such as "defendant operated a slaughter house in close proximity to plaintiff's residence"*) and
   Third, (*here describe injury such as "ill-smelling odors escaped from defendant's premises onto plaintiff's property and this substantially impaired plaintiff's use of his property,"*) and

   Fourth, such use by defendant of his property was unreasonable.

4. The common enemy doctrine regarded surface water as the enemy, and each owner was at liberty to guard against it, or divert it from his premises, provided he exercises reasonable care and prudence in accomplishing that object. Thus, each proprietor had to protect his own lands against the common enemy of all. *Heins Implement Co.*, 859 S.W.2d at 686.

be analyzed under nuisance. *Heins Implement Co.*, 859 S.W.2d at 689. The Larsons properly requested that the trial court give MAI 22.06 on nuisance. The trial court's failure to give MAI 22.06 in this case is presumptively prejudicial. Because *Heins Implement Co.* states that this type of issue is to be analyzed as a form of nuisance and Rule 70.02(b) requires that an applicable MAI instruction shall be given to the exclusion of any other on the same subject, we find the Larsons were prejudiced by the trial court's failure to instruct the jury according to MAI 22.06. Further, we find that a manifest injustice resulted from the trial court's failure to properly instruct the jury.

Therefore, the trial court plainly erred in submitting the Angeleses' verdict directing instructions, Instructions Number 7 and 13, and in failing to submit an instruction on nuisance. Point granted.

Because it is closely related to the Larsons' first point, we will now address their fifth point. In their fifth point, the Larsons argue the trial court erred in failing to grant their motions for directed verdict and/or for judgment notwithstanding the verdict because no evidence was introduced which would establish that the Larsons changed the amount of water that flowed from their property onto the Angeleses' property, or that the Larsons' use of their property was unreasonable. The Larsons argue, in particular, that the Angeleses also failed to establish a submissible case under a nuisance theory.

Like the Larsons' first point, this point has not been preserved for our review. We will nonetheless exercise our discretion to review it for plain error.

■ Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. *Frank v. Environmental Sanitation Man-*

*agement, Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). The law of nuisance recognizes two conflicting rights: the right of property owners to control their land and use it to benefit their best interests; and the right of the public and neighboring land owners to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land. *Id.* Whether nuisance is present is dependent on the facts and is determined on a case-by-case basis. *Id.* at 880–81.

A submissible case of nuisance can be established on the four following factors: (1) the Angeleses' used their property as a residence; (2) the Larsons' installed a pool which altered the flow of surface water onto the Angeleses' property; (3) the water injured the Angeleses; and (4) the Larsons use of their property was unreasonable. *See Id.* and MAI 22.06. To determine whether a plaintiff has made a submissible case against a defendant, we view the evidence in the light most favorable to the plaintiff, presume his evidence is true, give him the benefit of all reasonable and favorable inferences drawn therefrom, and disregard all evidence to the contrary. *CADCO, Inc.*, 220 S.W.3d at 435.

■ In this case, the evidence in the light most favorable to the Angeleses showed the Angeleses used their property as a residence. Mr. Angeles testified there were houses situated at higher elevations than his house, but that the builder put in swales to direct the flow of water from these properties, and these swales kept water off of the Angeleses' property. Mr. Angeles testified further that from 1999 to 2004, he did not have water accumulating in his backyard and never had any standing water in his backyard. Mr. Angeles also asserted that he never had any water in his basement as a result of

the downspouts on his house. Mr. Angeles also noted that his house had a sump pit in the basement, but that it had never had water in it until the Larsons started their pool project. Shortly after the Larsons' project began, Mr. Angeles testified, he discovered standing water in his basement and had to rush to purchase a sump pump because the sump pit was overflowing. Mr. Angeles also testified regarding photographic evidence that depicted the changed location of some swales after the Larsons' pool project began. Mr. Angeles' testimony also showed he had a sprinkler system installed in 2001, but that he did not have a problem with his backyard getting saturated until the Larsons' pool project began in 2004. Mr. Angeles also stated that since the beginning of the Larsons' pool project, he had water in his basement about ten times, even though he had done nothing to his property that increased the water coming off of his property after the installation of the Larsons' pool. Thus, there is substantial circumstantial evidence to show the Larsons' pool project altered the flow of surface water onto the Angeleses' land. The Angeleses also offered evidence that they were injured because of the diminution of the value of their property.

Thus, the Angeleses offered sufficient evidence to make a submissible case on a theory of nuisance. As noted above, reasonableness is a question of fact. *Heins Implement Co.*, 859 S.W.2d at 689. There is sufficient evidence here to submit the issue of the reasonableness of the Larsons' use of their property to a jury.

Therefore, the trial court did not plainly err in failing to grant the Larsons' motions for directed verdict and/or for judgment notwithstanding the verdict because the Angeleses made a submissible case for their claim. Point denied.

Having found that the Larsons are entitled to a new trial based on their first point, we need not address the Larsons' second, third, and fourth points.[5]

■ We now turn to Pool Pros' cross-appeal. In its first point on cross-appeal, Pool Pros argues the trial court erred in finding its motion for new trial was untimely filed. Pool Pros contends the trial court's judgment was entered on April 17, 2007, and its motion or new trial was filed on May 2, 2007, within the thirty days allowed by Rule 78.04.

Rule 78.04 provides "[a]ny motion for new trial ... shall be filed not later than thirty days after the entry of judgment." Rule 74.01(a) provides " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed."

In this case, the trial court's entry of judgment occurred on April 17, 2007.[6] Pool Pros filed its motion for new trial on May 2, 2007, which was within the thirty day time limit of Rule 78.04.

Thus, Pool Pros' motion for new trial was timely filed and the trial court erred in finding that it was untimely. Point granted.

In its second point on cross-appeal, Pool Pros argues the trial court erred in sub-

---

5. The Larsons' second, third, and fourth points raise issues surrounding the Angeleses' evidence regarding the purported diminution in value of their property and the Angeleses' failure to make a submissible case on the theory of negligence.

6. The trial court incorrectly found judgment had been entered when the jury returned its verdict on March 16, 2007.

mitting the Angeleses' verdict directing instruction using a negligence standard rather than the reasonableness standard in MAI 22.06.

Based on our holding in the Larsons' first point above, we also grant this point of Pool Pros' cross-appeal. The trial court erred in submitting the Angeleses' verdict directing instruction using a negligence standard rather than the reasonableness standard in MAI 22.06. Point granted.

Having addressed Pool Pros' first point and having found Pool Pros is entitled to a new trial based on its second point, we need not address its third point.[7]

The trial court's judgment is reversed and remanded for a new trial consistent with this opinion.

KATHIANNE KNAUP CRANE, P.J. and KENNETH M. ROMINES, J., concur.

---

7. Pool Pros' third point concerned the admission of the Angeleses' evidence regarding the diminution in the value of their property.