Tim ATKINSON, Respondent–
Appellant,

v.

Greg CORSON, Appellant–Respondent;

Lisa Corson, Appellant.

Nos. WD 69035, WD 69080.

Missouri Court of Appeals,
Western District.

June 30, 2009.

Ronald L. Jurgeson, Lee's Summit, MO, for appellant.

Scott A. Hunter, Kansas City, MO, for respondent.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, C.J., and HAROLD L. LOWENSTEIN, J.

ALOK AHUJA, Judge.

In this dispute between adjoining landowners, Defendants–Appellants Greg and Lisa Corson appeal from a judgment entered on a jury verdict in favor of Plaintiff–Respondent Tim Atkinson. Atkinson cross-appeals the trial court's grant of a directed verdict in favor of Greg Corson on Atkinson's punitive damages claim based on Mr. Corson's alleged violation of the rule of reasonable use of surface water. For the reasons which follow we affirm on the Corsons' appeal, but reverse the trial court's refusal to submit Atkinson's punitive damage claim to the jury, and remand for a new trial as to punitive damages on Atkinson's Count I.

## Factual Background

In 2001, Atkinson purchased a twenty-acre plot of land north of the Corsons' property near Pleasant Hill in Cass County. The parties enjoyed a cordial relationship at first, and at one point, in late 2002 or 2003, even discussed the possibility of jointly constructing a fence along the line dividing their respective properties.[1]

At some point thereafter, the parties' relationship began to deteriorate. In 2003, after seeing Mr. Corson and his son walking on Atkinson's side of the property line, Atkinson placed two "No Trespassing" signs on the south edge of his property facing the Corsons' land. After these signs were posted, Atkinson noticed that

---

1. Ultimately, however, Atkinson began constructing the fence along the parties' property line without the Corsons' help; as discussed below, the fence has not been completed.

one of them was riddled with shotgun splatter and bullet holes.

A small ditch, sometimes referred to by the parties as a "wash," ran along the parties' shared property line. This ditch or wash began on the Corsons' property, meandered onto Atkinson's property for approximately fifty feet, and then ended on the Corsons' property. Testimony indicated that, on Atkinson's property, the ditch was eighteen inches deep, and two to three feet across. As set forth below, this ditch became the centerpiece of the present dispute.

In 2005, Atkinson began constructing a second pond on the southwest corner of his property. As part of that construction, Atkinson's contractor removed some trees and stumps along the property line and "smoothed out" the ditch. According to Atkinson, the ditch was not completely filled in, and his contractor left a low spot approximately six inches deep so that water could continue to flow naturally through Atkinson's property. Shortly thereafter, and purportedly after discussing the matter with the Missouri Department of Conservation (which Atkinson disputes), Mr. Corson constructed a berm along the parties' property line, allegedly in an attempt to recreate the water flow which had existed before the ditch was smoothed out and filled in by Atkinson. Mr. Corson created the berm by placing dirt, brush, logs, and stumps, piled approximately two to four feet high, along the property boundary. According to Atkinson, the berm is far longer than the ditch whose water flow Mr. Corson claims he was trying to recreate; at points, the berm rests against the partially-finished fence Atkinson had erected.

Atkinson claimed that the berm altered the natural flow of water along the property line, causing water to be trapped and to pool on his property. The pooled water, Atkinson claimed, created a marshy area of approximately 1.5 acres that no longer drains, and is unmowable and unusable as a result. Atkinson also testified that, due to the marshiness of the area, he could not complete the construction of the fence separating the parties' properties.

On August 7, 2006, Atkinson filed a Petition for Damages and Injunctive Relief in the Circuit Court of Cass County, naming Greg and Lisa Corson as defendants. Atkinson filed his First Amended Petition on February 26, 2007.

A jury trial was held on July 17 and 18, 2007. At the close of all the evidence, the trial court granted the Corsons' renewed motion for directed verdict with respect to Atkinson's claim for punitive damages under Count I, which alleged a violation of the rule of reasonable use of surface water. Later that day, the jury returned a verdict in favor of Atkinson on Count I, and assessed damages of $7500.00 against the Corsons. The jury also found in favor of Atkinson on Count V, which alleged trespass by Mr. Corson by shooting Atkinson's "No Trespassing" sign, and assessed actual damages of $1.00, and punitive damages of $500.00.

The trial court entered judgment on the jury's verdict. Both parties' post-judgment motions were denied. This appeal and cross-appeal followed.

## Analysis

### I.

 In their first Point, the Corsons allege that the trial court erred in denying their motion for judgment notwithstanding the verdict because there was insufficient evidence to support the jury's finding that the Corsons' diversion of surface water was unreasonable under the circumstances.

The standard of review of denial of a JNOV is essentially the same as for review of denial of a motion for directed verdict. A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. Accordingly, a motion for JNOV is properly granted when the motion identifies at least one element of the plaintiff's case that is not supported by the evidence.

*Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007) (citation omitted).

▬▬ In *Heins Implement Co. v. Missouri Highway & Transportation Commission*, 859 S.W.2d 681 (Mo. banc 1993),[2] the Missouri Supreme Court rejected the "common enemy" doctrine, under which landowners were largely free to obstruct or divert the flow of surface water without regard to the effect of their actions on others,[3] in favor of the reasonable use of surface water rule:

Perhaps the [reasonable use] rule can be stated most simply to impose a duty upon any landowner in the use of his or her land not to needlessly or negligently injure by surface water adjoining lands owned by others, or in the breach thereof to pay for the resulting damages. The greatest virtue of the reasonable use standard is its ability to adapt to any set of circumstances while remaining firmly focused on the equities of the situation.

*Id.* at 690. Under this rule,

each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.

*Id.* at 689 (quotation omitted). "Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct." *Id.*; *see also Klokkenga v. Carolan*, 200 S.W.3d 144, 154–56 (Mo.App. W.D.2006); *Bettinger v. City of Springfield*, 158 S.W.3d 814, 818–20 (Mo.App. S.D.2005).

▬▬ The Corsons' claim that Atkinson failed to make a submissible case under the *Heins* rule relies almost exclusively upon Mr. Corson's testimony, thereby ignoring the testimony of several witnesses, as well as photographic and video evidence, that supports the jury's determination that the Corsons' construction of the berm violated the reasonable use rule. Reviewing the evidence which *supports* the

---

**2.** *Heins* was recently abrogated on other grounds. *See Southers v. City of Farmington*, 263 S.W.3d 603, 613 (Mo. banc 2008).

**3.** "This doctrine held that surface water was a common enemy to all landowners; thus, he or she was allowed to guard against it in his or her own way. As such, when a landowner improved his or her property, he or she was not responsible for damages to the neighbor's land by reason of the fact that surface water might thereby have been turned upon his or her neighbor, so long as the improvements were done in a 'proper manner.'"
*Bettinger v. City of Springfield*, 158 S.W.3d 814, 818 n. 3 (Mo.App. S.D.2005) (citations omitted).

verdict, as we must under the governing review standard, more than sufficient evidence exists to support the jury's verdict here.

Witnesses testified that before the ditch was smoothed out by Atkinson, no one had actually seen it carry water; instead, there was testimony that it held water when it rained, but would dry up thereafter. Atkinson's contractors were instructed to smooth the ditch in a way that did not disrupt or change the manner in which the surface water naturally flowed, and testified that they had done so. In addition, evidence was presented that Atkinson's construction of the second pond would actually *decrease* the amount of water that would flow onto the Corsons' property. And although the ditch that was smoothed out was only approximately fifty feet in length, the berm Mr. Corson constructed was over seven times as long, running 380 feet along the parties' property line. Evidence was presented that Mr. Corson constructed the berm even though he was not actually experiencing any water problems. Mr. Corson also testified that he built the berm "to keep [Atkinson]'s water on [Atkinson]."

Mr. Corson's side of the story is different. According to him, there were no water problems along the property line until after the ditch on Atkinson's property was partially filled. Mr. Corson testified that, following research, planning, and discussions with Missouri Department of Conservation officials, he decided to construct the berm. Following the berm's construction, Mr. Corson testified that the water flowed exactly as it had before, and thus that his actions did nothing more than restore the status quo. Thus, Mr. Corson contends, his construction of the berm was not unreasonable.

The problem, of course, is that the jury was free to disbelieve all of Mr. Corson's testimony. While the Corsons have shown that conflicting evidence was presented to the jury, such conflicts in the evidence do not merit reversal, particularly when the inquiry involves the inherently fact-based issue of reasonableness. Point I is denied.

## II.

In Point II, the Corsons argue that the trial court erred in denying their motion for judgment notwithstanding the verdict concerning Mrs. Corson's liability for violating the rule of reasonable use.

■ The Corsons' argument in Point II is that Mrs. Corson cannot be liable because insufficient evidence existed that she "was involved with the planning or construction of the berm which was located on the Corson property," or knew about Mr. Corson's intention to construct the berm before it was built. The Corsons cite no authority, however, to support the proposition that a property owner must be directly involved in the planning and/or construction of a surface-water diversion to be held liable for violation of the rule of reasonable use. Indeed, both *Heins,* as well as the pattern instruction the Corsons argue was applicable here (MAI 22.06), speak in terms of a landowner's "use" of his or her property—not direct involvement in construction of the surface-water obstruction. *See* 859 S.W.2d at 689–90.

■ " '[A]n appellant has the obligation to cite appropriate and available precedent or explain why such authority is not available if she expects to prevail.' " *Rainey v. SSPS, Inc.,* 259 S.W.3d 603, 605 (Mo.App. W.D.2008)(quoting *Lueker v. Mo. W. State Univ.,* 241 S.W.3d 865, 868 (Mo. App. W.D.2008)); *see also Rodieck v. Rodieck,* 265 S.W.3d 377, 385 (Mo.App. W.D. 2008). Besides *Heins* and MAI 22.06, other precedent exists, in connection with

claims of public or private nuisance,[4] which addresses the degree to which a property owner's conduct must contribute to the creation or maintenance of a nuisance in order for the property owner to be liable for a nuisance condition on his or her property. *See, e.g., City of St. Louis v. Benjamin Moore & Co.,* 226 S.W.3d 110, 114–15 (Mo. banc 2007); *City of St. Louis v. Varahi, Inc.,* 39 S.W.3d 531, 537–38 (Mo.App. E.D.2001); *Rosenfeld v. Thoele,* 28 S.W.3d 446, 451–52 (Mo.App. E.D.2000); *Grommet v. St. Louis County,* 680 S.W.2d 246, 252–53 (Mo.App. E.D.1984); *Kelly v. Boys' Club of St. Louis, Inc.,* 588 S.W.2d 254, 257 (Mo.App. E.D.1979); *Bellflower v. Pennise,* 548 F.2d 776, 778–79 (8th Cir. 1977) (Missouri law). *Varahi, Kelly,* and *Bellflower* specifically address a landowner's responsibility for the nuisance-creating actions of third parties. *See also* RESTATEMENT (SECOND) OF TORTS § 838 (1979). Authority relevant to the Corsons' argument was available.

Because the Corsons cited no governing (or even persuasive) legal authority that would allow us to conclude that the trial court erred in denying their JNOV motion as to Mrs. Corson's liability, we deny Point II without addressing the merits of the issue.

### III.

In Point III, the Corsons claim that the trial court committed reversible error by submitting Instruction No. 8 to the jury on the issue of alleged diversion of surface water. Instead, they claim, the jury should have been instructed on the basis of MAI 22.06, which applies a nuisance standard.

■ The Corsons did not object to Instruction No. 8, nor did they submit an alternate proposed instruction of any kind, much less MAI 22.06. Rule 70.03[5] states that "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Moreover, the Corsons failed to raise the claimed instructional error in their post-trial motion. *Id.* ("The objections must also be raised in the motion for new trial in accordance with Rule 78.07."). As a result, this claim of error was not properly preserved for appeal.

■ Even so, Rule 84.13(c) states that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." However, while an unpreserved claim may be reviewed for plain error in this Court's discretion, "[p]lain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Roy v. Mo. Pac. R.R. Co.,* 43 S.W.3d 351, 363–64 (Mo.App. W.D.2001) (internal citation omitted). We will reverse for plain error in civil cases only "in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of

---

4. "The rule of reasonable use is essentially a rule of nuisance law. In *Heins,* the Supreme Court held that surface water rights and liabilities were not to be analyzed exclusively as property law questions, but were to be analyzed as a form of nuisance." *Thomas v. City of Kansas City,* 92 S.W.3d 92, 98 (Mo.App.

W.D.2002) (citation omitted); *see also Klokkenga,* 200 S.W.3d at 155 n. 10.

5. Unless otherwise indicated, all rule references are to the Missouri Rules of Civil Procedure (2008).

the case." *Flood ex rel. Oakley v. Holzwarth*, 182 S.W.3d 673, 680 (Mo.App. S.D. 2005) (internal quotation omitted).

■■■■ "To establish that [an] instructional error rose to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict." *Hensley v. Jackson County*, 227 S.W.3d 491, 497–98 (Mo. banc 2007) (internal quotation omitted). The appellant must show more than prejudice by an erroneous instruction, and instead "must prove that the error resulted in a manifest injustice or miscarriage of justice." *Roy*, 43 S.W.3d at 364 (internal quotation omitted).[6]

■■■ As indicated above, the Corsons claim, for the first time on appeal, that the jury should have been charged under MAI 22.06, which reads:

Your verdict must be for plaintiff if you believe:

First, plaintiff used his property as a residence, and

Second, (*here describe nuisance such as "defendant operated a slaughter house in close proximity to plaintiff's residence"*) and

Third, (here describe injury such as "*ill-smelling odors escaped from defendant's premises onto plaintiff's property and this substantially impaired plaintiff's use of his property,*") and

Fourth, such use by defendant of his property was unreasonable.

Instruction No. 8, with which the jury was charged, read as follows:

On the claim of plaintiff for violation of the rule of reasonable use concerning surface water against defendants Greg Corson and Lisa Corson, your verdict must be for plaintiff if you believe:

First, defendants use the berm upon their property; and

Second, defendants' berm unreasonably interferes with the flow of surface water; and

Third, plaintiff was thereby damaged.

The Corsons rely on *Angeles v. Larson*, 249 S.W.3d 278 (Mo.App. E.D.2008), to support their contention that the trial court's failure to use MAI 22.06 rather than Instruction No. 8 constituted plain error. But that case is distinguishable in a number of critical respects. First, as a procedural matter, the defendant in *Angeles* not only objected to the instructions that were ultimately given, but offered MAI 22.06 in their stead. *Id.* at 282. In addition, the appellants in *Angeles* included the issue in their post-trial motion, although the motion was determined to be untimely filed. *Id.* at 281. Most importantly, the Eastern District concluded that the instructions actually given in *Angeles* were legally erroneous because, unlike Instruction No. 8 here, they did not include the fundamental concept of the reasonable-

**6.** We note that, during the instruction conference, the Corsons' counsel expressly stated that he had no objections to the instructions the circuit court intended to give. This affirmative statement arguably waived the Corsons' right to *any* review, even for plain error. *See Flood*, 182 S.W.3d at 679 ("While not necessarily the case in all circumstances, Defendants' affirmative acceptance of these instructions here prevents us from finding any substantial grounds to believe that a manifest injustice or a miscarriage of justice resulted from the submission of these instructions to the jury. In this case we cannot say that the trial court erred in taking Defendants at their word when they said 'no' when asked if they had any objection to any of the jury instructions." (citation, footnote omitted)); *cf. Martens v. White*, 195 S.W.3d 548, 559 (Mo. App. S.D.2006) ("an announcement of 'no objection' when evidence is sought to be admitted, leaves no room for even plain-error review").

ness of defendant's use of his land, but were instead grounded in negligence principles. On this basis, *Angeles* found that the failure to give MAI 22.06—which the appellants in that case had expressly requested—was improper:

> The rule of reasonable use *makes obsolete the negligence and trespass nomenclature in cases involving the diversion of surface waters,* because the concepts of negligence and trespass are merged into, and made subject to, the rule of reasonable use.

249 S.W.3d at 282 (emphasis added). As the court noted, the claimed error in that case was that the instructions that were given were improper because MAI 22.06 "requires a finding that a defendant's use of his or her property is unreasonable," *id.*, something that was not captured by instructions which sounded in negligence.

Here, although the precise text of MAI 22.06 was not used, Instruction No. 8 captures the fundamental element of reasonableness, which is the touchstone of the reasonable use rule.[7] Moreover, the Corsons failed to object to Instruction No. 8 or offer MAI 22.06, and failed to raise the issue in a post-trial motion. Given the lack of any appropriate objection or argument prior to this appeal, and unlike in *Angeles,* "the trial court [here] was denied any opportunity to take remedial action." *Wright v. Barr,* 62 S.W.3d 509, 531 (Mo. App. W.D.2001).

In the circumstances of this case, the trial court did not plainly err in giving Instruction No. 8. Point III is denied.

## IV.

In Point IV, the Corsons contend that the trial court should not have allowed into evidence certain testimony of Atkinson relating to the value of, and resulting damages to, his property.

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Nelson v. Waxman,* 9 S.W.3d 601, 603 (Mo. banc 2000). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* at 604 (internal quotation marks omitted).

Atkinson testified that, because of the berm, a 1.5–acre area of his property adjoining the parties' property line was consistently damp and marshy, and water would pool there, because the berm Mr. Corson constructed kept the area from draining properly. As a result, Atkinson claimed he could no longer mow the area. In addition, he testified that there was no reason for him to attempt to finish the fence along the property line, because fenceposts would not hold in the marshy soil. Atkinson testified that the value of his property was $300,000 before construction of the berm, and that the berm had reduced his property's value by ten percent.

The Corsons take issue with two comments made by Atkinson during his testimony regarding the effect of the berm on the value of his property: (1) his response on direct examination that "I haven't been able to farm [the land] or rent it

---

7. By incorporating this reasonableness concept, Instruction No. 8 permitted consideration of the substantiality (or insubstantiality) of the injury to Atkinson caused by the Corsons' actions. *See Heins,* 859 S.W.2d at 689 ("[r]easonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct").

or nothing," when asked "[a]nd how has that [drainage issue] effected [sic] your use of the property"; and (2) his comment that he was "not able to fence it off."

■ The Corsons' argument focuses on the fact that, with respect to Count I, the jury was instructed on the measure of damages for a permanent, rather than temporary, nuisance. Namely, consistent with MAI 4.02, the jury was instructed that the measure of Atkinson's damages was "the difference between the fair market value of plaintiff's property ... before it was damaged and its fair market value after it was damaged." According to the Corsons, the testimony they challenge was not relevant to the determination of fair market value, but instead would have been relevant only if Atkinson was proceeding on a *temporary* nuisance theory.[8]

■ Fair market value means " 'the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so.' " *Turner v. Shalberg*, 70 S.W.3d 653, 659 (Mo.App. S.D.2002) (quoting *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 900 (Mo. banc 1990)). "It is determined not just by value to the owner, but also by the price that one who wishes, but does not need to buy, will pay." *Id.* " 'No one formula or method of determining value is binding or conclusive. The judicial determination of [fair market value] ... must be an informed judgment, but is not susceptible to determination by any precise mathematical determination.' " *Rodieck v. Rodieck*, 265 S.W.3d 377, 382 (Mo.

App. W.D.2008) (quoting *Nelson v. Nelson*, 195 S.W.3d 502, 507 (Mo.App. W.D.2006)). As the Corsons acknowledge, "an owner is presumed competent to testify to the value of his real property even though he does not qualify as an expert." *Sharaga v. Auto Owners Mut. Ins. Co.*, 831 S.W.2d 248, 252 (Mo.App. W.D.1992).

We cannot say that the trial court committed reversible error in failing to instruct the jury to disregard Atkinson's comment that he was no longer able to farm or rent his property as a result of the drainage problems caused by the berm. Here, Atkinson was not claiming as damages temporary losses from, for example, the foregone earnings due to his inability to farm or rent the property during a defined period of time. Instead, Atkinson's theory was that completely-fenced property would be worth more than property with an incomplete fence, because prospective purchasers who wanted to run cattle on the land—or rent it out to others to run cattle on the land—would likely pay more if the land was capable of being securely fenced on all four sides, rather than on only three. The same is true if a prospective purchaser would prefer to keep animals or cattle *off* the property. Indeed, Atkinson testified that one of the reasons *he* bought the property was to put livestock on it, but that he could not do so because of his inability to completely fence the property. While the Corsons cite authority to support their argument that Atkinson was limited to the diminution in his property's fair market value, they cite no authority to support their further claim that the testimony they challenge was irrelevant to that fair market value determi-

---

8. We note that, in the argument under Point IV, the Corsons claim that Count I should have been submitted on a temporary rather than permanent nuisance theory. The Corsons did not object on this basis to Instruction No. 9, which instructed the jury as to damages arising from a permanent nuisance, nor was any such argument raised in their postjudgment motion. Thus, the issue was not preserved for review, and we decline to engage in a plain-error review the Corsons do not request.

nation. The caselaw we have found suggests the contrary.[9]

Given the trial court's wide discretion in determining the admissibility of evidence, the nature of the Corsons' argument on appeal, and the potential relevance to Atkinson's damages of the evidence the Corsons challenge, we simply cannot say that the trial court acted so "unreasonabl[y] and arbitrar[il]y that the ruling shocks the sense of justice" when it admitted the evidence, and failed to instruct the jury to disregard it. Point IV is denied.[10]

## V.

In Point V, the Corsons argue that the trial court erred in submitting the trespass count against Mr. Corson, because there was insufficient evidence to support a jury finding that Mr. Corson committed trespass by shooting at Atkinson's "No Trespassing" sign. More specifically, the Corsons argue that "Greg Corson specifically denied shooting at the sign, and, further, ... [Atkinson] presented nothing but speculation and conjecture in alleging ... [that] Greg Corson was the individual who shot at the sign."

As the Corsons candidly acknowledge, this issue was not raised in their post-judgment motion for judgment notwithstanding the verdict or for new trial. Having failed to preserve the issue, the Corsons nevertheless contend that we should exercise plain error review.

We decline to do so. Without belaboring the point, we note that the jury was fully entitled to base its verdict on this claim on circumstantial evidence. And, while Atkinson may not have produced an eyewitness to the shooting, the circumstantial evidence supporting the jury verdict includes: evidence of the parties' prior acrimony; the testimony that Mr. Corson owned and had fired guns on his property; the fact that the sign faced the Corsons' property and presumably was shot from there; Mrs. Corson's testimony that she was not aware of any unauthorized shooting on her property; and the evidence that Mrs. Corson purchased a replacement sign after Atkinson told her he believed Mr. Corson had damaged the existing one. We find no basis on this record for plain-error review.

Mr. Corson also argues that the insufficiency of the evidence is shown by the fact that the jury initially returned a verdict awarding Atkinson $0.00 in actual damages for the damage to his "No Trespassing" sign, while also awarding $500.00 in punitive damages. (The trial court rejected the jury's initial verdict as inconsistent, and after further deliberations the jury ultimately awarded Atkinson $1.00 in actual damages.) That the jury initially returned a different verdict on actual damages—particularly when the jury found that Mr. Corson's conduct merited punitive damages—does not mean that there was insufficient evidence to support the jury's

---

9. *See Akers v. City of Oak Grove*, 246 S.W.3d 916, 920 (Mo. banc 2008) (in permanent taking case, where (as here) "lost fair market value of the property" is the measure of damages, "[s]eparate damages for loss of use are not available"; "Any damages for potential loss of use would instead be factored into calculating the lost fair market value of the property."); *Byrom v. Little Blue Valley Sewer Dist.*, 16 S.W.3d 573, 578 (Mo. banc 2000) (same).

10. While we do not decide Point IV on this basis, we question whether Atkinson's challenged testimony actually influenced the jury's verdict. Through the challenged testimony, Atkinson claimed he had experienced a $30,000 reduction in property value. However, the jury awarded him only $7,500, which equals the $5,000 per acre value to which he also testified, multiplied by the 1.5 acres which Atkinson testified had become unusable due to water problems.

finding that Mr. Corson committed a trespass.

Point V is denied.

## VI.

Atkinson's cross-appeal makes a single claim: that the trial court erred in directing a verdict for Mr. Corson on the issue of punitive damages on Count I, the claim for violation of the rule of reasonable use of surface water. Atkinson requests a new trial on punitive damages only.

As indicated above, "[t]he standard of review for a decision on a motion for a directed verdict or a judgment notwithstanding the verdict is the same." *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 520 (Mo.App. W.D.2007) (internal quotation marks omitted). Moreover,

> [b]ecause a directed verdict or judgment notwithstanding the verdict should only be granted where the plaintiff fails to make a submissible case, our review is restricted to determining whether the plaintiff made a submissible case. To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.

*Id.* at 520–21 (internal citations, quotation marks omitted). In conducting our review, we view "all the evidence in the light most favorable to the plaintiff, giving him or her the benefit of all reasonable inferences, and disregarding the defendant's evidence except to the extent that it aids the plaintiff's case." *Gamber v. Mo. Dep't. of Health & Senior Servs.*, 225 S.W.3d 470, 474 (Mo.App. W.D.2007) (internal quotation marks omitted).

■■■■ To make a submissible case for punitive damages, Atkinson was required to show, by clear and convincing evidence, that Mr. Corson's conduct constituted "either ... a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Werremeyer v. K.C. Auto Salvage Co., Inc.*, 134 S.W.3d 633, 635 (Mo. banc 2004). "Factual inferences which convincingly and clearly support the notion that the defendant acted with evil motive or reckless indifference to the rights of others are sufficient to meet the standard for submission of punitive damages." *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 666 (Mo.App. W.D.2008) (internal quotation marks omitted); *see also Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 811 (Mo.App. W.D.2008) (" 'A submissible case is made if the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference.' " (citation omitted)).

■■■■ Despite the demanding standard for submission of a punitive damages claim, we agree that the evidence here would support a punitive damage award, and that Atkinson was accordingly entitled to submit the issue to the jury. As Atkinson correctly points out, the evidence could have permitted a jury to find that the smoothing of the ditch on Atkinson's property did not have any appreciable impact on the flow of water between the two properties. Indeed, the evidence would have allowed the jury to find that Atkinson's construction of the pond on his property actually lessened the flow of water onto the Corsons' property. Both Mr. and Mrs. Corson admitted that they had not

experienced any water problems between the time of Atkinson's work and construction of the berm; moreover, the Corsons did not raise any issues concerning water flow with Atkinson before constructing the berm. Given the testimony that the surface water naturally flowed *from* Atkinson's property *onto* the Corsons' property, the jury could have found that Mr. Corson's statement that he constructed the berm to "keep [Atkinson]'s water on [Atkinson]" supported a finding that he constructed the berm to *alter* the natural surface water flow pattern in the area, and for the specific purpose of trapping surface water, which otherwise would have drained away, on Atkinson's property. Moreover, the jury could have inferred the requisite culpability from the fact that Mr. Corson constructed the berm to be over seven times longer than the original ditch whose water flow patterns he insisted he was trying to recreate. In addition, a jury determination that Mr. Corson acted maliciously is also supported by the evidence of the longstanding hostility between the parties, and in particular Mr. Corson's animosity toward Atkinson, including his cursing and use of obscene hand gestures, his behavior as Atkinson was constructing the fence along the property line, and his vandalism of the "No Trespassing" sign Atkinson installed. *See, e.g., Fabricor, Inc. v. E.I. DuPont de Nemours & Co.,* 24 S.W.3d 82, 98 (Mo.App. W.D.2000)(evidence "show[ing] defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed" may be considered in determining propriety of punitive damages).

Viewing the evidence and the reasonable inferences from that evidence in the light most favorable to Atkinson, the jury could have found that there was no legitimate need for Mr. Corson to construct the berm, and that his decision to do so was spawned by vindictiveness toward his neighbor, and to interfere with Atkinson's ongoing efforts to improve and fence his property. Given our standard of review, we simply cannot say, as a matter of law, that the jury could not have found in Atkinson's favor on his claim that Mr. Corson's construction of the berm was the product of evil motive or, at the very least, reckless indifference. Thus, the jury should have been allowed to consider Atkinson's punitive damages claim, and the trial court erred in directing a verdict in Mr. Corson's favor on this issue. Atkinson's cross-appeal is granted.

### Conclusion

For the reasons set forth above, we affirm in part and reverse in part. The case is remanded for a new trial on Atkinson's claim for punitive damages on Count I of his petition.

All concur.