Anthony HOGAN, Respondent,

v.

BOARD OF POLICE COMMISSION-ERS OF KANSAS CITY, Missouri, et al., Appellant,

Police Retirement System of Kansas City, Appellant.

Nos. WD 71687, WD 71705.

Missouri Court of Appeals, Western District.

March 8, 2011.

Rik N. Siro, Kansas City, MO, for Respondent.

Lisa S. Morris, Kansas City, MO, for Appellant Board of Police Commissioners of Kansas City, MO.

Richard F. Adams, Douglas Ghertner, Kansas City, MO, for Appellant Police Retirement System of Kansas City.

Before Division One: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and CYNTHIA L. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

The Board of Police Commissioners (Police Board) and the Police Retirement System of Kansas City (Retirement Board) appeal from the trial court's judgment awarding Anthony Hogan $139,520 in lost past retirement benefits.

Hogan worked for the Kansas City Police Department for over 24 years when, on August 28, 2000, he had a confrontation with his supervisor, Sergeant Michael Corwin. Based on the confrontation, Hogan filed a claim of age discrimination against the Police Board and was ultimately successful, receiving a jury verdict of $700,000 in actual damages and $2,000,000 in punitive damages. The Police Board and Hogan later entered into a settlement agreement in which Hogan was paid $1,950,000 and was allowed to pursue this action for review of benefits in his retirement case.

Hogan sustained injuries resulting from the confrontation in the form of headaches, loss of sleep, and depression. To treat his injuries, Hogan received medical treatment from Dr. Bryon Milgram, a psychiatrist, and Dr. Bernard Abrams, a neurologist. Both Dr. Milgram and Dr. Abrams opined that the sole and exclusive cause of Hogan's injuries was his confrontation with Corwin. Both doctors also stated that Hogan was permanently unable to perform the full and unrestricted duties of a police officer as a result of his injuries. Hogan also sought treatment from a police department physician, Dr. Craig Lofgreen, who determined Hogan was permanently disabled as a police officer but did not determine whether Hogan's injury was duty related.

Upon filing his age discrimination case, Hogan was examined by the Police Board's physician, Dr. George Harris, who determined that Hogan was unable to perform the full and unrestricted duties of a police officer. Dr. Harris did not opine as to whether Hogan's injury was duty related. After Hogan's medical file was sent to the medical board of the Retirement Board, Dr. Harry Brown, a licensed psychologist with the medical board, examined Hogan and reviewed his medical file. Dr. Brown determined that Hogan was permanently disabled and recommended Hogan be retired. Dr. Brown also opined that Hogan's disability was not duty related, although he stated that Hogan's condition was "the result of his reactions to incidents with his supervisors at work" and that there were "no other causative factors and there is no documented history of mental illness or physical problems before the work incidents of August 2000." Nonetheless, Dr. Brown stated that he did not consider

Hogan's condition to be work related because:

> [i]f the police department does not find that there was any wrongdoing on their part then this would meet the criteria of being exclusively caused by P.O. Hogan's reactions to what he perceived happened to him. Therefore, the retirement would be considered non-service connected, if the police department does not find any wrongdoing on their part.

Following the resolution of his age discrimination claim, Hogan filed a petition for review in Jackson County Circuit Court, requesting review of the Police Board and Retirement Board's decision that Hogan be retired on a non-duty related basis, rather than on a duty related basis, pursuant to § 536.150.[1] Following a bench trial, the trial court ruled that Hogan's disability injuries were the sole and exclusive result of the confrontation with Corwin and awarded Hogan lost past retirement benefits.

On appeal, neither the Police Board nor the Retirement Board disagrees with the trial court's conclusion that Hogan's retirement was duty related. The Police Board contends that the trial court erroneously held that the Police Board acted arbitrarily and capriciously in certifying Hogan for retirement because it was required to certify the decision made by the Retirement Board. Further, the Police Board contends that the trial court erred in ordering the Police Board to pay lost past retirement benefits when such benefits are the sole responsibility of the Retirement Board. The Retirement Board makes three contentions on appeal: (1) the trial court committed plain error in denying the Retirement Board's motion to amend or for a new trial when the trial court award-

ed Hogan damages that included taxes Hogan would have to pay on receipt of his damages; (2) the trial court committed plain error in denying the Retirement Board's motion to amend or for a new trial when the trial court awarded Hogan damages of $2,978 for taxed retirement benefits in 2009; and (3) the trial court erred in ordering the Retirement Board to pay compensatory damages to Hogan when the Retirement Board is not authorized under statute to make such a payment.

 Section 536.150 provides for judicial review of administrative decisions in matters that are not deemed "contested" cases pursuant to §§ 536.100 to 536.140. All parties concede this a "non-contested" case brought pursuant to § 536.150. In a § 536.150 proceeding, the trial court is required to conduct a *de novo* review and determine whether the agency's decision was "unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009) (internal citations omitted).

> On appeal from the circuit court of a noncontested administrative decision, we review the judgment of the circuit court, rather than the decision of the administrative agency. As such, our review is essentially the same as for other judgments in a judge-tried case. In reviewing a judge-tried case, . . . we will affirm the decision of the trial court unless it is not supported by substantial and competent evidence, is against the weight of the evidence, or erroneously declares or applies the law.

*State ex rel. Christian Health Care of Springfield, Inc. v. Missouri Dep't of*

---

1. All statutory citations are to RSMo 2000 unless otherwise indicated. The relevant statutes in Chapter 86 were repealed and reissued with new numbers in 2005. However, because Hogan was retired in 2002, we cite the 2000 versions.

*Health,* 229 S.W.3d 270, 275 (Mo.App. W.D.2007) (internal quotation and citations omitted).

### The Certification Process (Police Board Point I)

The Police Board contends that it did not act arbitrarily and capriciously, as held by the trial court, because it was required by statute to retire Hogan in accordance with the decision rendered by the Retirement Board. In October 2006, and again in June 2009, the Police Board filed motions to dismiss Hogan's petition for review on the basis that the Police Board had no statutory authority to decide whether Hogan's retirement was duty or non-duty related, because that decision was reserved for the Retirement Board. The trial court denied both motions on September 1, 2009, and held that the Police Board was authorized by law to make the determination whether a disability was duty or non-duty related.

The duties and obligations of the Police Board and Retirement Board are generally codified in chapters 84 and 86 of the Missouri Revised Statutes. Chapter 84 addresses the authority and duties of the Police Board as to management of the police department, and Chapter 86 deals with the pension system. Pursuant to § 86.213, the Retirement Board is responsible for the administration and operation of the police retirement system. The Retirement Board also appoints three physicians to participate on the medical board and such physicians conduct medical examinations when directed by the Retirement Board. *§ 86.237.2.*

The award of duty disability retirement benefits is governed by § 86.450.1, which states:

Any member who is permanently unable to perform the full and unrestricted duties of a police officer as the natural, proximate and exclusive result of an accident occurring within the actual performance of duty at some definite time and place or through an occupational disease … shall be retired by the board of police commissioners upon certification by one or more physicians of the medical board of the retirement board that the member is mentally or physically unable to perform the full and unrestricted duties of a police officer, that the inability is permanent or likely to become permanent, and that the member should be retired.

The award of non-duty disability retirement benefits is governed by § 86.457.1, which states:

Any member who has completed ten or more years of creditable service and who has become permanently unable to perform the full and unrestricted duties of a police officer as the result of an injury or illness not exclusively caused or induced by the actual performance of his or her official duties or by his or her own negligence, shall be retired by the board of police commissioners upon certification by one or more physicians of the medical board of the retirement board that the member is mentally or physically unable to perform the full and unrestricted duties of a police officer, that the incapacity is permanent or likely to become permanent and that the member should be retired.

The Police Board contends that these statutory provisions mandated that the Police Board retire Hogan once the medical board certified he was unable to perform his duties as either duty or non-duty related and that it had no discretion as to that decision, and, therefore, it could not be liable. The trial court disagreed with the Police Board's interpretation of the statutes and held that the medical board's certification is not linked to the first por-

tion of the statute, which defines the standard for a duty or non-duty related retirement. Because the statutes are silent as to which entity determines whether the disability is duty or non-duty related, the trial court held that the Police Board's discretion was not limited by statute. Further, the trial court looked to the 1997 version of the statutes, which gave the Police Board the power and discretion to determine whether a disability was duty or non-duty related.[2] Ultimately, the trial court held that both the Police Board and the Retirement Board were proper parties to the review proceeding because the Police Board was the entity that officially retires an officer, while the Retirement Board was the entity that began the disability payment process.

■ This is an issue of statutory interpretation, which we review *de novo*. *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009). When faced with a statute that has been changed by the Legislature, we assume that the Legislature is "familiar with the construction placed upon the original act, and the new statute must be construed in the light of the problem it seeks to remedy and of the usages, circumstances, and conditions existing at the time the change was made." *State ex rel. Edu-Dyne Sys., Inc. v. Trout*, 781 S.W.2d 84, 86 (Mo. banc 1989).

■ Accordingly, we interpret statutes with the following in mind:

When the Legislature amends a statute, it is presumed that its intent was to effect some change in the existing law. The Legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. This Court should never construe a statute in a manner which would moot the legislative changes, because the legislature is never presumed to have committed a useless act. To amend a statute and accomplish nothing from the amendment would be a meaningless act.

*State v. Joos*, 218 S.W.3d 543, 548–49 (Mo. App. S.D.2007) (internal citations and quotations omitted).

■ Additionally, when interpreting statutes, "the primary rule of statutory interpretation is to give effect to the legislative intent as reflected in the plain language of the statute." *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010). Therefore, we "enforce statutes as written, not as they might have been written." *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006).

■ The Police Board argues that, under the 2000 version of the statute, it has no discretion whether to retire an officer as duty or non-duty related. The Police Board asserts that it must do whatever the medical board physician determines. But that is not what the statutes say. Rather,

2. Section 86.457.1, Cum.Supp.1997, reads:

If a member has completed ten or more years of creditable service and if the board of police commissioners determines that such member has become permanently incapacitated for duty as the result of an injury or illness not caused or induced by the actual performance of his official duties or by his own negligence, that such member is mentally or physically incapacitated for further performance of duty as a police-

man, that the incapacity is permanent or likely to become permanent, and that such member should be retired, such member shall be entitled to a disability benefit upon the terms and conditions provided in this section.

The provision allowing for duty-related disability retirement contained similar language, granting the Police Board the power and discretion to determine whether an injury was duty related. *§ 86.450.1*.

both § 86.450.1 and § 86.457.1 specify that the member "shall be retired by the board of police commissioners." They likewise specify a physician of the medical board of the Retirement Board must certify "that the member is mentally or physically unable to perform the full and unrestricted duties of a police officer," that the inability or incapacity "is permanent or likely to become permanent, and that the member should be retired." §§ 86.450.1 & 86.457.1. In other words, the clear language of the statutes provides that the Police Board retires the member, and it does so upon the medical board's certification.

Unlike the 1997 version of the statutes, neither statute specifies that the duty or non-duty related decision is the exclusive decision of one board or the other. The 1997 versions of § 86.450.1 and § 86.457.1 provided that the Police Board had the exclusive power and discretion to make the duty or non-duty related decision. They contained no requirement for any input from the Retirement Board. By amending those sections in 2000 to require certification from the medical board of the Retirement Board before a member could be retired, the Legislature clearly evidenced an intent to make retirement determinations a shared responsibility of the two boards. If the Legislature had intended to shift the entire decision making process to the Retirement Board, as the Police Board argues, it would have said that members "shall be retired by the retirement board," instead of saying what the statutes actually say, that members "shall be retired by the board of police commissioners."

The facts in this case support the conclusion that retirement decisions are a shared responsibility under the 2000 version of the statutes. The trial court found that the "Police Board did not merely 'rubber stamp' the Medical Board's determination." It would ask questions regarding the certification. It likewise considered arguments of counsel and reviewed and considered medical opinions from other physicians in making its decision.

Therefore, in light of the clear language of the statutes and the facts of this case, the trial court did not err in finding that the Police Board acted unreasonably, arbitrarily, and capriciously when it determined that Hogan's disability was non-duty related. It was statutorily required to, and did in fact, actively participate in making the decision. Point denied.

### Application of Origin of Claim Doctrine (Retirement Board Point I)

For its first point on appeal, the Retirement Board contends that the trial court committed plain error in denying its motion to amend or for a new trial because the trial court awarded Hogan lost past retirement benefits that included taxes Hogan would have to pay on receipt of his award. The Retirement Board asserts that Hogan would not be required to pay taxes upon the receipt of his monetary award and, therefore, that it was plain error to deny the motion to amend or for new trial.

At trial, Hogan presented evidence of his damages, consisting of exhibits and the testimony of his expert, accountant Doug Axon. Axon testified that three elements were necessary to any award in order to make Hogan whole again. First, Axon stated that Hogan should receive the difference in his pension had he been retired on a duty basis, receiving 75% of his salary, rather than on a non-duty basis, receiving 65% of his salary. This would amount to a total of $45,064.00. Further, Axon testified that Hogan sustained additional income tax liability of $47,019.00 because his non-duty benefits were taxable as income, whereas duty benefits would not

have been taxable. Finally, Axon explained that the total of these two amounts, $92,083.00, would be taxable to Hogan as income and would result in additional taxes amounting to $33,217.00. Accordingly, Axon testified that it was necessary to "gross up" the losses so that the net amount ultimately received would equal $92,083.00 and that to achieve that result, the total award would need to be $139,520.00. In addition, Axon prepared Exhibit 29, which reflected the calculations and damages about which he testified. Exhibit 29 was admitted into evidence without objection.

The Police Board and the Retirement Board's cross-examination of Axon was generally directed at how he made his calculations and an attempt to show that they were inconsistent with calculations from the previous trial. Virtually no effort was made to discredit the basis for his testimony or to suggest that there was no legal basis for his testimony. Moreover, during cross-examination, Axon testified that the lump sum would be a taxable event and that he was unaware of a way that the trial court could award a lump sum to Hogan that would be excluded from income tax. Neither the Police Board nor the Retirement Board presented any evidence, in the form of expert testimony or otherwise, countering Axon's testimony.

In its judgment, the trial court essentially adopted Axon's calculations in awarding damages. The trial court summarized Hogan's losses as follows:

(a) The pension benefits differential from Hogan's June 21, 2002 retirement through the June 30, 2009 trial is in the amount of $45,064.00.

(b) Since the non-duty pension benefits Hogan has received to date were taxable, while duty-related benefits are not taxable until Hogan attains age 65, Ho-

gan accrued tax liability in the amount of $47,019.00 through June 30, 2009.

(c) Hogan's total losses through June 30, 2009, are in the amount of $92,083.00. If Officer Hogan receives a lump sum payment in this amount, it would be considered taxable and result in additional tax liability of $33,217.00. In order to make him whole, this payment must be "grossed up" to cover tax, requiring a payment totaling $139,520.00, for lost past retirement benefits.

After the trial court entered its judgment, the Retirement Board filed a motion to amend or for a new trial, including a legal argument that there is an "origin of claim doctrine" established by federal case law that precludes taxation of the benefits awarded by the trial court and, therefore, the trial court erred in "grossing up" the award. The trial court denied the motion, and the Retirement Board now asserts the same issue on appeal.

The Retirement Board did not object to Axon's testimony, nor did it object to admission of Hogan's Exhibit 29, reflecting Axon's calculations of Hogan's damages. The Retirement Board didn't even cross-examine Axon regarding the "origin of claim doctrine." Moreover, the Retirement Board presented no expert testimony regarding the "origin of claim doctrine" or, for that matter, any evidence purporting to demonstrate that the amount of damages Axon testified to and Hogan sought were incorrect or unfounded. Under these circumstances, it is difficult to see how the trial court can be convicted of error.

Nevertheless, the Retirement Board asks us to review the matter as plain error. It contends that the "origin of claim doctrine" is the law of the land and that the trial court was required to follow it, even if the Retirement Board did not bring it to the attention of the trial court until it filed its after trial motions.

■■■■ It is within this Court's discretion to review for plain error. *Rule 84.13(c)*.[3] In deciding whether to exercise our discretion, we determine whether the trial court "committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *In re J.L.B.*, 280 S.W.3d 147, 155 (Mo.App. S.D.2009). "[W]hile an unpreserved claim may be reviewed for plain error in this Court's discretion, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Atkinson v. Corson*, 289 S.W.3d 269, 276 (Mo.App. W.D.2009) (internal quotation omitted). "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* at 276–77 (internal quotation omitted).

■■■■ Accordingly, in determining whether to exercise our discretion to provide plain error review, we look "to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo.App. W.D.2004).

If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights. However, as in the case of regular appellate review, not every obvious, evident and clear error found in plain error review requires reversal. In the case of regular review, to be reversible, the error found must have prejudiced the appellant. Likewise, in the case of plain error review, the error must have prejudiced the appellant, except that such prejudice must constitute manifest injustice or a miscarriage of justice. Thus, in the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice.

*Id.* at 864–65 (citations omitted).

■■■■ Based on the record before us, the trial court did not commit error, plain or otherwise, in using the evidence presented by Axon to arrive at it damages award. The Retirement Board failed to make proper and timely objections to Axon's testimony, and no record was made in the trial court from which this court could find the Retirement Board's argument meritorious. "The obligation to make a record in the trial court concerning issues a party may wish to present on appeal is on that party." *Daniel v. Indiana Mills & Mfg., Inc.*, 103 S.W.3d 302, 319 (Mo.App. S.D.2003) (citing *State v. Naucke*, 829 S.W.2d 445, 460 (Mo. banc 1992)). Moreover, facially we do not find any evident, obvious, and clear error made by the trial court that affected the substantial rights of the Retirement Board because the Retirement Board cites no authority to demonstrate that the "origin of claim doctrine" would apply to Hogan's lost past retirement benefits or to Hogan's return of capital for previously paid taxes. Indeed, the contrary would appear to be true.[4] Point denied.

3. All rule citations are to the Missouri Rules of Civil Procedure (2010), unless otherwise indicated.

4. As best we can tell, the "origin of claim doctrine" was created to determine the characterization of settlement and judgment payments. *Mitchell v. C.I.R.*, 73 F.3d 628, 632

### Payment of 2009 Taxes (Retirement Board Point II)

■ For its second point on appeal, the Retirement Board contends that the trial court committed plain error in denying its motion to amend· or for a new trial when the trial court awarded Hogan sums that included taxes he would pay during a period of six months in 2009 when, in fact, Hogan was not going to file income tax returns for 2009 until 2010, by which time the trial court's judgment would be final. Our standard of review, stated *supra,* applies to the Retirement Board's second point, and we again find no reason to exercise our discretion to conduct plain error review.

Axon testified at trial that the only way to make Hogan whole was to compensate him for the amount he was taxed through the end of June 2009, as a result of the non-duty related status. Axon testified that this amount totaled $47,000. The Retirement Board did not object to this testimony, failed to present evidence regarding when Hogan would file his tax returns, and failed to present alternative damage calculations with this six-month period omitted. As stated *supra,* we will not invoke plain error review when a party fails to make timely objections and when the party fails to make a record in the trial court con-

cerning the issues raised on appeal. *Atkinson,* 289 S.W.3d at 276; *Daniel,* 103 S.W.3d at 319. Moreover, we perceive no evident, obvious, and clear error, and certainly nothing close to something that might undermine our confidence in the outcome of the case. *Atkinson* at 276–77. Accordingly, we decline the ˙Retirement Board's request for plain error review. Point denied.

### Apportionment of Damages (Police Board Point II; Retirement Board Point III)

For their final points on appeal, both the Police Board and the Retirement Board contest the damages award by the trial court. The Police Board contends that the trial court erred in requiring the Police Board to compensate Hogan for lost past retirement benefits because the Police Board is not statutorily obligated to pay retirement benefits. The Retirement Board contends that the˙trial court erred in requiring the Retirement Board to pay compensatory damages, in the form of the "gross up," to Hogan. Hogan asserts these arguments were not properly preserved below.

■ As part of its motions to dismiss, the Police Board generally alleged that

(6th Cir.1996). "Under this test, characterization of an expense as 'personal' or 'business', 'depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property....' " *Id.* (quoting *United States v̇. Gilmore,* 372 U.S. 39, 48, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963)).

While the origin of claim doctrine has been used to characterize damage awards for tax purposes based on the nature of the injury recovered on, it has not been used to break down an award of backpay into compensation for taxable wages and compensation for nontaxable fringe benefits. We have no

precedent for such apportionment of a cash backpay award. To the contrary, the Internal Revenue Service has made clear that court-awarded damages of cash backpay are includible in gross income in their entirety, even where a portion of the backpay represents lost nontaxable fringe benefits. *McKean v. United States,* 33 Fed.Cl. 535, 538 (1995). Clearly, under *McKean,* the Retirement Board's· argument fails. Accordingly, given the Retirement Board's failure to demonstrate how the "origin of claim doctrine" would apply to Hogan's lost past retirement benefits or to Hogan's return of capital for previously paid taxes, we find no evident, obvious, or clear error in the trial court's damage award.

Hogan receives his disability pension from the Retirement Board and the Retirement Board would be the only proper entity to change Hogan's retirement status, adjust his pension, or pay same. The motion to dismiss was overruled. After judgment, the Police Board again asserted in its motion to amend or alter the judgment that it is not responsible for paying retirement benefits to Hogan, that the Retirement Board is the entity legally required to do so, and therefore the judgment should be amended to order the Retirement Board to pay all damages. The motion was denied without comment on October 20, 2009. Accordingly, the Police Board's contention is properly preserved for appeal.

 The Retirement Board, however, did not raise its issue before the trial court. Unlike the Police Board, the Retirement Board did not file a motion to dismiss asserting its claim. As noted *supra*, the Retirement Board failed to object to Axon's testimony or the exhibits relating to damages that were admitted into evidence. It presented no evidence, argument, or legal authority to the trial court even suggesting that, because it only pays retirement benefits, it cannot be liable for any kind of compensatory damages. Moreover, it did not raise the issue in its motion to amend judgment or, in the alternative, for a new trial.

The first and only time the Retirement Board made any mention of allocation of damages was in its suggestions in opposition to the Police Board's post-judgment motion to alter or amend. There, the Retirement Board suggested the trial court allocate the damages from the pension dif-

ferential to the Retirement Board, while requiring the Police Board pay all additional damages. Thus, it is clear that the Retirement Board failed to preserve this issue for appeal.

We likewise decline plain error review. Facially, we cannot say that there are "substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen*, 145 S.W.3d at 864. Moreover, as stated repeatedly *supra*, we will not invoke plain error review when a party fails to make timely objections and when the party fails to make a record in the trial court concerning the issues raised on appeal. *Atkinson*, 289 S.W.3d at 276; *Daniel*, 103 S.W.3d at 319. Therefore, the Retirement Board not only failed to preserve this issue for appeal but also failed to demonstrate an evident, obvious, or clear error committed by the trial court so as to justify plain error review.[5] *See Riddell v. Bell*, 262 S.W.3d 301, 304 (Mo.App. W.D.2008).

Regarding the Police Board's contention, the trial court classified Hogan's losses in three groups: (1) the pension differential, being the difference between the pension benefits Hogan actually received for his non-duty related retirement versus the pension benefits he should have received for duty related retirement; (2) the tax differential, representing the tax liability incurred on non-duty related benefits that would not have been incurred on duty-related benefits; and (3) the ultimate grossing up for the tax penalty on the lump sum. The trial court ordered the

---

**5.** We observe, *ex gratia*, that the Retirement Board's argument is premised on the notion that § 86.1030 only authorizes the Retirement Board to pay retirement benefits and "administrative expenses." It claims, without citation to authority, that court ordered damages rendered against the Board for damages caused by its "administration" of the Retirement System would not qualify as "administrative expenses." Suffice it to say that we think it unlikely the Retirement Board would find dictionary definitions or the common understanding of the phrase "administrative expenses" supportive of its contention.

defendants to compensate Hogan in the total amount of $139,520. The Police Board contends that the trial court erred in requiring the Police Board to compensate Hogan for lost past retirement benefits because the Police Board is not statutorily obligated to pay retirement benefits.

The Police Board's argument goes like this. The Retirement Board is solely responsible for the payment of retirement benefits to members. The Retirement Board is vested with the responsibility for the general administration and proper operation of the retirement system. § 86.393.1. The Police Board is required to deduct from each member's compensation a percentage determined by the Retirement Board, § 86.470, and the city contributes to the pension fund. § 86.477. However, the city's contribution is "in addition to and separate from the appropriations made by the city for the operation of the police department." *Id.* The Retirement Board, not the Police Board, is the entity vested with the power over the funds from police officers' retirement and member contributions. §§ 86.750; 86.760; 86.770. Therefore, the Police Board reasons, it is not statutorily capable of paying retirement benefits, even those awarded pursuant to a judgment for lost past retirement benefits.

Pursuant to § 536.150.1, the court is to review the administrative decision to determine, among other things, whether it was "unreasonable, arbitrary, or capricious or involves an abuse of discretion" and, if so, to "render judgment accordingly." Moreover, § 536.150.3 provides that nothing in § 536.150 shall be construed "to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section." We have already determined that the trial court correctly found that both the Police Board and the Retirement Board acted arbitrarily and ca-

priciously in making the non-duty related decision regarding Hogan's retirement. As a result, the trial court ordered the Police Board to retire Hogan to duty-related disability pension, that the Retirement Board administer such pension, and that the Police Board and the Retirement Board "compensate plaintiff Anthony Hogan in the amount of $139,520.00 for lost past retirement benefits."

█ The pension differential component of the benefits award, as noted *supra*, represents the difference between the benefits the Retirement Board actually paid to Hogan for his non-duty related pension versus the amount the Retirement Board should have paid him for a duty related pension. While we are not necessarily persuaded that the trial court could not order the Police Board to pay the pension differential because it has no statutory authority to pay retirement benefits, as the Police Board argues, we do agree that the Retirement Board was the entity that received the benefit of the previous erroneous lower differential (payment at 65% rather than 75%). Had the correct decision been rendered initially, the Retirement Board, not the Police Board, would have paid Hogan's retirement pension at 75% of his salary. Thus, the Retirement Board would receive a windfall if the Police Board is held jointly liable for the pension differential component of the trial court's $139,520.00 award. We, therefore, conclude that the trial court erred in holding the Police Board liable for that part of the judgment.

Rule 84.14 permits the appellate court to enter the judgment the trial court should have given. *Sabatino v. Sabatino,* 314 S.W.3d 854, 862 (Mo.App. W.D.2010). Accordingly, we modify the trial court's judgment to apportion the award of lost past retirement benefits as follows: (a) The Retirement Board shall compensate Re-

spondent Anthony Hogan for the pension differential component of lost past retirement benefits in the amount of $45,064.00; and (b) the Police Board and the Retirement Board shall compensate Respondent Anthony Hogan for the balance of lost past retirement benefits in the amount of $94,456.00. In all other respects, the judgment of the trial court is affirmed.

All concur.