**Mark Andre LAJEUNESSE,**
**Respondent,**

v.

**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIRECTOR, FAMILY SUPPORT DIVISION, Appellant.**

**No. WD 73477.**

Missouri Court of Appeals, Western District.

Oct. 4, 2011.

Denise N. Gabel, Jefferson City, MO, for appellant.

Jay W. Kimmons, Moberly, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

The Missouri Department of Social Services, Family Support Division ("DSS") appeals from the trial court judgment that reversed an administrative child support order against Mark Lajeunesse ("Father").[1] Father's sole point on appeal is that section 454.425[2] does not give DSS the authority to enter child support orders on behalf of persons who are not citizens of the United States. We disagree and reverse the trial court's judgment and reinstate the administrative order entered by DSS.

## Factual and Procedural Background

Maria Kabalina ("Mother") gave birth to a child on July 16, 2007, in South Charleston, West Virginia. After the birth, genetic testing revealed that Father could not be excluded as the child's biological father and that Father's probability of paternity was 99.99%.

Mother applied for child support services with DSS. On her application, Mother indicated that she lived in Russia with the child. At the time of Mother's applica-

---

1. Under Local Rule XXXV, if an appeal is from the trial court's reversal of an agency decision, the briefing schedule is reversed so that the respondent files the first brief. Here, DSS is the appellant and Lajeunesse is the respondent, even though the briefing schedule was reversed.

2. All statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

tion, Father was a resident of Missouri. DSS entered its notice and finding of financial responsibility, concluding that Father should pay child support in the amount of $649 per month. Father requested an administrative hearing to dispute DSS's notice and finding of financial responsibility.

An administrative hearing on DSS's notice and finding of financial responsibility was held. Both Mother and Father testified regarding their respective employment and financial situations. Following the hearing, the administrative hearing officer calculated support in accordance with Rule 88.01 and Civil Procedure Form 14 and entered an order requiring Father to pay $236 per month in child support on behalf of the child.

Father filed a petition for judicial review in the trial court. The trial court found that DSS was without jurisdiction to enter an administrative order that required Father to pay child support. Thus, the trial court sustained Father's petition to overturn the existing administrative order.

DSS appeals.

## Standard of Review

■ In an appeal following judicial review of an agency action by a trial court, we review the decision of the agency, not the trial court. *Spencer v. Zobrist*, 323 S.W.3d 391, 396 (Mo.App. W.D.2010). The scope of judicial review of an administrative action is limited to whether the agency's decision:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

Section 536.140.2; *see also Cmty. Bancshares, Inc. v. Sec'y of State*, 43 S.W.3d 821, 823 (Mo. banc 2001) (noting that review of agency decisions is governed by section 536.140). We defer to the agency's findings of fact but review an agency's interpretation, application, or conclusions of law *de novo*. Section 536.140.3; *Yates v. Dir. of Revenue*, 279 S.W.3d 215, 217 (Mo.App. W.D.2009).

## Analysis

■ Father claims that DSS acted in excess of its statutory authority by entering a child support order on behalf of Mother, who is not a United States citizen. The statute upon which Father relies is section 454.425, which states:

The division of child support enforcement shall render child support services authorized pursuant to this chapter to persons who are not recipients of public assistance as well as to such recipients. Services may be provided to children, custodial parents and other persons entitled to receive support. An application may be required by the division for services and fees may be charged by the division pursuant to 42 U.S.C. Section 654 and federal regulations. *Services provided under a state plan shall be made available to residents of other states on the same terms as residents of this state.* If a family receiving services ceases to receive assistance under a state program funded under Part A of Title IV of the Social Security Act, the division shall provide appropriate notice to such family, and services shall contin-

ue under the same terms and conditions as that provided to other individuals under the state plan, except that an application for continued services shall not be required and the requirement for payment of fees shall not apply to the family.

(Emphasis added.) Father argues that the emphasized language in section 454.425 limits child support services to United States citizens because it refers to "residents of other states." By negative implication, Father argues that unless a recipient is a resident of Missouri or of another state, the recipient is not eligible for child support services.[3]

Whether section 454.425 allows or forbids persons who are not residents of the United States to benefit from child support services has never been established by a Missouri court. Thus, Father's point on appeal requires us to engage in statutory interpretation. When interpreting statutes, the primary rule is to give effect to the intent of the legislature, as evidenced by the plain language of the statute. *Hogan v. Bd. of Police Comm'rs of Kansas City*, 337 S.W.3d 124, 130 (Mo. App. W.D.2011). Further, "[s]tatutes relating to the same subject matter are *in pari materia* and should be construed harmoniously. This principle 'is all the more compelling when the statutes are passed in the same legislative session.'" *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, LLC*, 248 S.W.3d 101, 107 (Mo.App. W.D.2008) (citation omitted) (quoting *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992)).

The plain language of section 454.425 does not support Father's argument. Though the isolated sentence on which Father relies prohibits DSS from discriminating between residents of Missouri and other states in affording services, the statute is silent on the broader subject of eligible recipients of services. The subject of eligibility for services is addressed earlier in section 454.425, where DSS is directed to "render child support services authorized pursuant to this chapter *to persons* who are not recipients of public assistance as well as to such recipients," a directive that is devoid of any reference to a recipient's residency. (Emphasis added.) Section 454.425 then directs that "[s]ervices may be provided *to children, custodial parents and other persons entitled to receive support*," again an authorizing statement that is devoid of any reference to a recipient's residency. (Emphasis added.) Reading section 454.425 as a whole, we conclude that its plain terms do not limit DSS's authority to provide child support services to recipients who reside in the United States, but instead permit DSS to afford services to *all* children, custodial parents and other persons *entitled to receive support.*

We turn, therefore, to other statutes within the state plan for child support services to determine who is entitled to receive support. Section 454.400.2(14) provides in relevant part:

[T]he division of child support enforcement shall have the power:

. . .

---

**3.** Given Father's reliance on the emphasized sentence in section 454.425, we have generously assumed that Father's argument that a recipient of services from DSS must be a "United States citizen" is intended to refer loosely to someone who resides in the United States, and not narrowly to only those persons, whether or not residents of the United States, who can document lawful citizenship. This must have been Father's intention, as he offered no evidence of Mother's citizenship status at the administrative hearing, and focused only on Mother's residence in Russia, and as the child for whom services were ordered was born in the United States, and is thus a United States citizen.

(14) To provide services relating to ... the establishment, modification and enforcement of child support obligations. The division shall provide such services:

(a) [to each child who is a recipient of federally funded assistance]; and

(b) *To any other child,* if an individual applies for such services with respect to such child.

(Emphasis added.) By its plain terms, section 454.400.2(14) is broad, requiring child support services to be provided to *any* other child for whom services are applied. This is in keeping with Section 454.425, which also broadly permits services to be provided to *all* children, custodial parents, and persons entitled to receive support. A harmonious reading of section 454.425 and 454.400.2(14) indicates that the legislature intended to authorize and require DSS to provide services to *any* child for whom services are applied. This broad and unrestricted directive is not, by its terms or by implication, limited to residents (or citizens) of the United States.

Our conclusion is supported by the fact that the state plan for child support services was enacted in a single legislative session and in response to federal funding requirements. Funding for child support enforcement is provided by the federal government in the form of Temporary Assistance for Needy Families ("TANF") and grants. To receive funding, a state must create a statutory scheme that complies with the federal requirements, as set forth 42 U.S.C.A. §§ 651–669b. *Blessing v. Freestone,* 520 U.S. 329, 333, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). The operative provisions of 42 U.S.C.A. §§ 651–669b (2003 & West Supp.2011) were primarily enacted in 1996, and required states to adopt state plans for child and spousal support which complied with the federal requirements. In response, the Missouri

legislature adopted the Child Support Enforcement Act in 1997. *See* sections 454.390–.528. To administer Missouri's plan, the state legislature established the "Division of Child Support Enforcement" within DSS. Section 454.400.1. The Missouri legislature expressed its intent to create a statutory scheme consistent with federal requirements to secure funding in section 454.400.1, which states that DSS must perform its child support enforcement duties "consistent with federal requirements as specified in P.L. 93–647 and 45 CFR, section 303.20." *See also Baldwin v. Baldwin,* 174 S.W.3d 685, 687–88 (Mo.App. S.D.2005) (noting that the Missouri legislature responded to the federal requirements by adopting the Child Support Enforcement Act); *see also Wills v. Wills,* 750 S.W.2d 567, 571 (Mo.App. E.D. 1988) (noting that the Child Support Enforcement Act "tracked the provisions and requirements of the federal enactment, but in many respects, ... went beyond the provisions of the federal act").

Among the federal requirements for state plans is that the state must "provide services relating to ... the establishment, modification, or enforcement of child support obligations ... with respect to [children who are recipients of federally funded assistance and] *any other child,* if an individual applies for such services with respect to the child." 42 U.S.C.A. § 654(4)(A) (West Supp.2011) (emphasis added). Missouri's plan complies with that requirement in section 454.400.2(14) by providing that the division of child support enforcement shall have the power "[t]o provide services relating to ... the establishment, modification and enforcement of child support obligations," and that "[t]he division shall provide such services ... to *any other child,* if an individual applies for such services with respect to such child." (Emphasis added.) The United

States Department of Health and Human Services, Administration for Children and Families, Office of Child Support Enforcement, has interpreted the requirement in section 42 U.S.C.A. § 654 that services be provided to any other child as a literal requirement "that State agencies must provide ... services to anyone who has filed a proper application for services with the agency .... regardless of nationality." U.S. DEP'T OF HEALTH & HUMAN SERVS., DIRECT APPLICATION FOR TITLE IV–D SERVICES FROM INTERNATIONAL RESIDENTS (Jan. 14, 1999).[4] Given our legislature's intent as expressed in section 454.400.1 that DSS perform its child support enforcement duties consistent with federal requirements, we conclude the legislature intended the phrase "any other child" in section 454.400.2(14) to refer to all children regardless of nationality.

In addition, 42 U.S.C.A. § 654(6)(A) requires that a state plan must "be made available to residents of other States on the same terms as to residents of the State submitting the plan." In response, the Missouri legislature adopted section 454.425, which provides that child support services will "be made available to residents of other states on the same terms as residents of this state." This provision prohibits DSS from discriminating with respect to the provision of services based on a recipient's state of residency, a policy directed by the federal government. The anti-discrimination provision was neither written nor intended, however, to define the contours of eligibility for services. Instead, the anti-discrimination provision reflects the limited contours of the federal government's effective reach when a policy it mandates is tied to federal funding for state plans. We conclude that the legislature's anti-discrimination policy does not operate to restrict the legislature's independent intention to require DSS to provide services to "all children" regardless of nationality.

Contrary to Father's suggestion, DSS acted within its statutory authority by entering a child support order requiring Father to pay $236 per month in child support on behalf of the child. The trial court erroneously concluded that DSS lacked jurisdiction to enter a child support order.

### Conclusion

We reverse the trial court's judgment and reinstate the administrative order.

All concur.

4. *Available at* http://www.acf.hhs.gov/ programs/cse/pol/PIQ/1999/piq–9901.htm.