GARY W. LYNCH, J.
In this driving while intoxicated ("DWI") case filed against Natalie Lane Champagne ("Defendant"), the State appeals the trial court's order ("the suppression order") granting Defendant's motion to suppress all of the evidence relating to her warrantless seizure when a patrol officer initiated a traffic stop of her motor vehicle ("the traffic stop").See section 547.200.[1] The State presents two points on appeal challenging the suppression order. The first of those points, contending that "the traffic stop was lawful under Missouri Revised Statute § 304.019.1(4)" is dispositive. We reverse the suppression order, do not reach the State's remaining point, and remand the case for further proceedings consistent with this opinion.
Factual and Procedural Background
Before trial, Defendant moved to "suppress all evidence." Her motion alleged that there was no legal basis for the traffic stop and, thus, it amounted to an unlawful seizure in violation of, inter alia , Article I, Section 15 of the Missouri Constitution and the Fourth Amendment of the United States Constitution.
The trial court held a hearing on Defendant's motion to suppress. The factual basis for the traffic stop is not contested. On January 15, 2017, Benjamin Kaufman ("Officer Kaufman"), a Springfield police officer, stopped the vehicle Defendant was driving because he observed that the vehicle only had one functioning brake light, on its passenger side, out of the three on the vehicle and Defendant did not make any hand gestures when braking or stopping. The State contended that these facts demonstrated that Officer Kaufman had a legal justification to make the traffic stop, in that Defendant was violating section 304.019 ("Hand and mechanical signals, violations, penalty"). Defendant contended that her one operating brake light demonstrated her compliance with that statute. The trial court entered the suppression order granting Defendant's motion. The State then filed this interlocutory appeal.
Standard of Review
"The proper interpretation of a statute is a question of law we review de novo. " State v. Spradling , 413 S.W.3d 670, 673 (Mo. App. S.D. 2013). The same is true as to whether a Fourth Amendment violation occurred. State v. Lammers , 479 S.W.3d 624, 630 (Mo. banc 2016) ; see also State v. Pike , 162 S.W.3d 464, 472 (Mo. banc 2005) (stating that the same analysis applies to cases brought under Missouri Constitution as under United States Constitution).
*872 Discussion
The State's first point contends:
The trial court erred in sustaining [Defendant]'s Motion to Suppress because the traffic stop was lawful under Missouri Revised Statute § 304.019.1(4) and 11 CSR 50-2.190(2), in that a driver is required to have all stoplights that were installed by the manufacturer in operating condition when decreasing the speed of a motor vehicle.
We agree with the State that the traffic stop was lawful under section 304.019.1(4).
Section 304.019.1(4) provides, in pertinent part:
1. No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.
* * *
(4) The signals herein required shall be given either by means of the hand and arm or by a signal light or signal device in good mechanical condition of a type approved by the state highway patrol [.[2] ]
(Emphasis added).
The State argued below and now argues on appeal that a driver may comply with section 304.019.1(4) in one of two ways: (1) "by means of the hand and arm" or (2) "by a signal light or signal device in good mechanical condition of a type approved by the state highway patrol[.]" The State further argues that compliance by use of "a signal light or signal device" is qualified by the requirement that the light or device be "in good mechanical condition of a type approved by the state highway patrol."
Defendant, on the other hand, argued in the trial court and now argues here that section 304.019.1(4) affords her three options for signaling that her motor vehicle was stopping or decreasing its speed: (1) "by means of the hand and arm" (2) "or by a signal light" (3) or through the use of a "signal device in good mechanical condition of a type approved by the state highway patrol[.]" Defendant's argument is premised upon her reading of section 304.019.1(4) in which the phrase, "in good mechanical condition of a type approved by the state highway patrol[,]" qualifies "signal device" but not "signal light[.]"
The State and Defendant agree that Defendant did not signal "by means of the hand and arm" and therefore did not comply with section 304.019.1(4)'s first option. Similarly, the parties agree that Defendant's single brake light is a "signal light," as that term is used in that section. The parties dispute, however, whether the section requires that a "signal light" be "in good mechanical condition of a type approved by the state highway patrol[.]"
"Courts apply certain guidelines to interpretation, sometimes called rules or canons of statutory construction, when the meaning is unclear or there is more than one possible interpretation." State v. Rowe , 63 S.W.3d 647, 649 (Mo. banc 2002). When the words are clear, however, there is nothing to construe beyond applying the plain meaning of the law. Id. (citing State ex rel. Mo. Pac. R.R. v. Koehr , 853 S.W.2d 925, 926 (Mo. banc 1993) ). "The primary rule of statutory construction is to give effect to legislative intent as reflected in the plain language of the statute."
*873 Win frey v. State , 242 S.W.3d 723, 725 (Mo. banc 2008). "We examine the language used in the statute according to its plain and ordinary meaning." State v. Acevedo , 339 S.W.3d 612, 617 (Mo. App. S.D. 2011). "We particularly look to whether the language is clear and plain to a person of ordinary intelligence." Id.
Viewed in this context, Defendant's reading of section 304.019.1(4) is strained, unreasonable, and contrary to the section's plain and ordinary meaning. In reading this section, a person of ordinary intelligence would have no expectation that, while a signal device is required to be "in good mechanical condition of a type approved by the state highway patrol[,]" a signal light is not. No reasonable person of ordinary intelligence would expect that the Legislature intended the absurd and illogical result of authorizing the use of any type of signal light, regardless of its size, location, color or intensity, and regardless of whether it was in good mechanical condition. Defendant tacitly concedes the absurdity of the latter by stating and contending in her brief that section 304.019.1(4) only requires one "operating" brake light. Yet, the only language in the section addressing operation-"in good mechanical condition"-is in the qualifying phrase that Defendant claims does not apply to a signal light. Defendant's argument highlights that her reading of the statute is illogical to a person of ordinary intelligence.
Nevertheless, even if we assume, without deciding, that the wording of section 304.019.1(4) is unclear and ambiguous, the application of other statutory rules of construction leads us to the same conclusion. First, under the last antecedent rule, "relative and qualitative words are to be applied only to the words or phrases preceding them. The relative and qualitative words are not to be construed as extending to or including others more remote." Spradling v. SSM Health Care St. Louis , 313 S.W.3d 683, 688 (Mo. banc 2010) (citation and internal quotation marks omitted) (emphasis added). This rule supports the State's construction because "a signal light or signal device" is a noun phrase where "a" (an indefinite article) and "signal light or signal device" (the nouns) combine to form the noun phrase, which, in turn, is modified by the immediately following qualifying words, "in good mechanical condition of a type approved by the state highway patrol[.]" "Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all." Id. (quoting Norberg v. Montgomery , 351 Mo. 180, 173 S.W.2d 387, 390 (Mo. 1943) ) (internal quotation marks omitted).
Similarly, the "Series-Qualifier Cannon" of statutory construction identified and discussed in ANTONIN SCALIA & BRYAN A. GARNER , READING LAW : THE INTERPRETATION OF LEGAL TEXTS 147 (2012) also supports our analysis. "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Id.[3]
Here, the determiner "a" that precedes the first element in the series ("signal light") is not repeated before the second element ("signal device"). As such, the postpositive modifier ("in good mechanical condition of a type approved *874 by the state highway patrol") modifies both elements in the series. Therefore, the language of "a signal light or signal device in good mechanical condition of a type approved by the state highway patrol" dictates that the "signal light" as well as the "signal device" must be "in good mechanical condition of a type approved by the state highway patrol[.]" Cf. Protect Fayetteville v. City of Fayetteville , 2017 Ark. 49, 510 S.W.3d 258, 263 n.1 (2017) (applying the same interpretation to similar phraseology found in an Arkansas statute). Conversely, "[t]he typical way in which syntax would suggest no carryover modification is that a determiner (a, the, some, etc.) will be repeated before the second element[.]" SCALIA & GARNER , supra , at 148 (e.g. , a signal light or a signal device in good mechanical condition of a type approved by the state highway patrol).
Having determined that "in good mechanical condition of a type approved by the state highway patrol" modifies "signal light[,]" the issue therefore turns to whether the one operating brake light on Defendant's motor vehicle was in compliance with this requirement. To ascertain what types of signal lights and signal devices are "approved by the state highway patrol" for the purposes of section 304.019.1(4), the State relies on and directs this court to 11 CSR 50-2.190(2).[4]
As relevant here, Title 11, Division 50, Chapter 2 of the Code of State Regulations ("CSR") contains rules promulgated by the Missouri State Highway Patrol, Motor Vehicle Inspection Division. 11 CSR 50-2.190(2), in particular, provides as follows: "Stoplights. Stoplights installed by the manufacturer[5] or their equivalent in number, size, and intensity shall be in operating condition. Stoplights may be red or amber, except when in combination with the taillight the stoplight must be red. Stoplights must operate when the service brake is applied."
"The code of state regulations shall contain the full text of all rules of state agencies in force and effect[.]" Section 536.031.2. Moreover, "[t]he courts of this state shall take judicial notice, without proof, of the content of the code of state regulations." Section 536.031.6. We interpret regulations according to the same rules as statutes. State v. Mattix , 482 S.W.3d 870, 874 (Mo. App. E.D. 2016).
The plain and ordinary language of 11 CSR 50-2.190(2) requires that "[s]toplights installed by the manufacturer or their equivalent in number ... shall be in operating condition" and "must operate when the service brake is applied." (Emphasis added). The State argues, and we agree, that this language requires that the number of brake lights (stoplights) on a motor vehicle must be the same in number as that installed by the manufacturer and that all of those lights operate when the vehicle's brake is applied. Defendant's motor vehicle, on the other hand, had only one functioning brake light (out of three) and therefore did not comply with the requirements of this rule.
In response, Defendant claims that 11 CSR 50-2.190(2) has no applicability to the facts of this case. In so claiming, Defendant observes, correctly, that the rule was expressly promulgated pursuant to section 307.365 (addressing motor vehicle safety inspections) and "describes the procedures and standards for the inspection of signaling *875 devices. " 11 CSR 50-2.190 (emphasis added). She further observes that "[n]owhere in the entirety of the regulations does it mention that the purpose of these regulations are for defining criminal conduct or defining what requirements are needed for operation of a motor vehicle." In other words, she claims this regulation is not a state highway patrol approval for "a signal light or signal device" for the purposes of section 304.019.1(4) because it was expressly adopted pursuant to section 307.365 to address its requirements related to vehicle inspections.
We need not determine, however, whether 11 CSR 50-2.190(2) applies as a state highway patrol approval under section 304.019.1(4) because in either event, Defendant was operating a motor vehicle in a manner that violated section 304.019.1(4)-Officer Kaufman's justification for initiating the traffic stop. If 11 CSR 50-2.190(2)applies , then, as discussed supra , Defendant's single operating brake light was not a signal light "of a type approved by the state highway patrol[,]" as required by section 304.019.1(4). If 11 CSR 50-2.190(2)does not apply , then, as observed by Defendant in her brief, no other applicable regulation exists granting any state highway patrol approval, as required in section 304.019.1(4).[6] Stated another way, no form of "signal light or signal device" is "of a type approved by the state highway patrol" because the Missouri State Highway Patrol has adopted no other rule addressing the subject or granting such approval. Taking Defendant's argument to its logical conclusion, therefore, the only way to comply with section 304.019.1(4)'s signal requirement is "by means of the hand and arm[,]" which, as Defendant has conceded, was not a signaling method that she employed.
Because Defendant failed to signal in a manner required by section 304.019.1(4), the suppression of the evidence arising from the traffic stop on the basis of an illegal seizure was erroneous. See State v. Granado , 148 S.W.3d 309, 311 (Mo. banc 2004) ("A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment."). Accordingly, point 1 is granted.
Because the State's first point is dispositive, we need not reach the allegation of error in its second point alleging that Officer Kaufman's "reasonable mistake of law" provided legal justification for the traffic stop. Issues that are not essential to the disposition of a case need not be addressed on appeal. State v. Kinkead , 983 S.W.2d 518, 520 (Mo. banc 1998).
Decision
The suppression order is reversed, and the case is remanded for further proceedings consistent with this opinion.
DON E. BURRELL, JR., P.J. - concurs
NANCY STEFFEN RAHMEYER, J. - concurs

Under section 547.200, the State is authorized to seek an interlocutory appeal of an order suppressing evidence. Unless otherwise indicated, all statutory references are to RSMo 2016.

304.019.1(4) proceeds to list various exceptions to its provisions, none of which are relevant to this case.

As an example: "A corporation or partnership registered in Delaware (a corporation as well as a partnership must be registered in Delaware)." Scalia & Garner , supra , at 148.

All regulatory references are to the Missouri Code of State Regulations (2016).

Generally, the United States Secretary of Transportation is required to prescribe motor vehicle safety standards, 49 U.S.C. § 30111 ; the Secretary, acting through the National Highway Traffic Safety Administration, enacted Standard No. 108 that defines and specifies the requirements for "stop lamps" on vehicles, 49 C.F.R. § 571.108 ; and manufactured vehicles must comply with this standard, see 49 U.S.C.A. § 30112.

Our judicial notice of 11 CSR 50, codifying regulations adopted by the Missouri State Highway Patrol, confirms Defendant's observation.