

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

WILFORD FREESTONE,         )
        )
        Appellant,         )
        )
v.         )         WD85492
        )
THE BOARD OF POLICE         )         Opinion filed:  October 24, 2023
COMMISSIONERS KANSAS         )
CITY, MISSOURI, ET AL.,         )
        )
        Respondents.         )

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE JOEL FAHNESTOCK, JUDGE**

Division Two:  W. Douglas Thomson, Presiding Judge,
Thomas N. Chapman, Judge and Janet Sutton, Judge

Freestone appeals from the trial court's judgment affirming the decision of the Board of Police Commissioners of Kansas City, Missouri ("BOPC") and the Police Retirement System of Kansas City, Missouri (the "Retirement Board") (collectively, the "Respondents") denying him retirement under the duty-related disability statute.  Freestone brings two points on appeal.  Freestone's arguments center around his desire to be retired under the duty-related disability statute, Section 86.1180, rather than the non-duty disability statute, Section 86.1200.

First, Freestone argues that the trial court misapplied the law in determining that he was not eligible for duty-related disability retirement. Second, Freestone argues that the trial court's judgment is not supported by substantial evidence and is against the weight of the evidence. Because the trial court misapplied the law in determining that Freestone was not eligible for duty-related disability retirement, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

Freestone was retired from the Kansas City Police Department ("KCPD") in March 2020 after approximately seventeen years of service. Freestone served in several roles with the KCPD, including as an undercover narcotics officer and a helicopter pilot.

Freestone began experiencing sleep problems and anxiety in 2005 while working undercover, and he would eventually be diagnosed with PTSD as a result of an incident that occurred while he was working undercover. Freestone did not report any mental health issues to KCPD until May 2018. Freestone reported that his mental health issues stemmed from several work-related events, including being held at gunpoint while working undercover and having an unexpected laser shone in his eyes while piloting a helicopter in 2018. Freestone stopped working in May 2018 after reporting his mental health concerns.

Freestone received treatment from a licensed psychologist who specializes in treating law enforcement officers and who contracted with the KCPD to provide such services. That psychologist referred Freestone to two other KCPD-approved

2

healthcare providers, a psychiatrist and a licensed clinical social worker, for additional evaluation and treatment. In November 2018, the licensed clinical social worker working with Freestone informed the KCPD that he did not expect Freestone would be able to return to police work at any point in the future. Freestone underwent a fitness for duty evaluation at the request of KCPD in January and February 2019. That evaluation determined that Freestone was not fit for duty.

Prior to this, in 2016, Freestone enrolled in law school while continuing to work full time for KCPD. In 2017, while continuing to work full time for KCPD and attending law school, he began working as a law clerk in a law firm, usually 5-10 hours per week, but up to 30 hours per week during trials. Later, Freestone stated that law school did not make him anxious and that he was satisfied with his law school work. He graduated from law school in 2019, passed the bar exam in 2020, and began the practice of law. Outside his work with the KCPD, he reported to the Medical Board doctor that he still had fun with his family, had hobbies, and remained active by going to the gym five to six days a week.

On September 6, 2019, the Retirement Board requested a member of its Medical Board ("Medical Board doctor") conduct a psychiatric evaluation of Freestone to answer the following questions:

  a. What is the medical or psychiatric diagnosis of Freestone's condition?

  b. Has Freestone received sufficient treatment to help prevent the illness from becoming permanent?

c.  Has Freestone followed treatment recommendations sufficiently to help prevent the illness from becoming permanent?

d.  Has enough time passed since the initial illness to determine if the condition is permanent and will prevent Freestone from permanently performing all normal activities of a police officer?

e.  Can [the Medical Board doctor] certify that Freestone is mentally unable to perform the full and unrestricted duties of a police officer, that the inability is permanent or likely to become permanent, and that he should be retired? If yes to all three conditions above, describe why the illness will permanently prevent him from performing the full and unrestricted duties of a police officer. If no to any of the three conditions above, please describe why [the Medical Board doctor] cannot certify the condition.

f.  If the response to all three conditions above is yes, is Freestone permanently unable to perform the full and unrestricted duties of a police officer as the natural, proximate, and exclusive result of an accident occurring within the actual performance of a duty at some definite time and place or through an occupational disease arising exclusively out of and in the course of his employment? Or is he unable to perform the full and unrestricted duties of a police officer as a result of an illness not exclusively caused or induced by the actual performance of his official duties or by his own negligence?

The Medical Board doctor met with Freestone on three separate occasions during her evaluation: in September 2019, November 2019, and January 2020. The Medical Board doctor also reviewed Freestone's pre-employment psychological testing from August 2002, various records from Freestone's KCPD-approved treatment providers, a phone call with Freestone's treating psychiatrist, and Freestone's fitness for duty report.

The Medical Board doctor noted that Freestone's psychiatrist had prescribed him multiple medications over the course of several months. Freestone was unable to take any of those medications for more than 2 to 3 days, each time reporting various side effects that made him unable to continue the medication. The Medical

4

Board doctor further noted that although Freestone claimed his issues with medication began after one dose, but that usually side effects came "after the person has been on it for a period of time . . . Two to four weeks, or three to six weeks. That's when you have a therapeutic level and steady state." At the time the Medical Board doctor authored her report, Freestone had not taken any anti-depressants for 18 months. The Medical Board doctor noted that Freestone's fitness for duty evaluation indicated he was suffering from major depression disorder and PTSD.

The Medical Board doctor also reviewed documents from Freestone's treating licensed clinical social worker. Those documents noted that Freestone reported experiencing panic attacks for 1 to 2 years prior to being taken off duty in May 2018. Freestone reported that he first experienced anxiety while working undercover in 2005 when he was robbed at gunpoint. Freestone stated that he had been taking a prescription sleeping aid regularly for 12 years because he struggled to sleep. Freestone's licensed clinical social worker recommended Freestone undergo EMDR therapy,[1] an evaluation for medication, and group therapy. Freestone underwent three sessions of EMDR therapy before stopping because he felt like it was not helping. According to Freestone, EMDR therapy was "too much." The licensed clinical social worker noted after a later session that EMDR therapy was ineffective, and that Freestone sometimes did not take his prescribed

_____

[1] EMDR therapy, or "eye movement desensitization and reprocessing" therapy is a mental health treatment technique that aids in the processing of traumatic memories.

medications because he struggled to accept his PTSD diagnosis. Freestone also reported struggling in group therapy because other KCPD officers were in the group. However, the licensed clinical social worker noted that law school was an "organizing factor" for Freestone that provided him with structure and focus.

The Medical Board doctor noted that KCPD asked Freestone to return to work answering information calls at a call center. Freestone reported to the Medical Board doctor that he felt unable to do this job and felt like it would "set him back." Freestone ultimately told KCPD that he was unable to work at the call center. Freestone reported that he experienced increased suicidal thoughts after being asked to return to work at the call center. He did not report these suicidal thoughts to any of his mental health providers at the time.

Freestone reported sleep struggles and often waking in a panic. He reported struggling with panic attacks and often takes a prescription anxiety medication before going to bed. Freestone also takes sleeping pills but still reports sleeping poorly. Freestone reported avoiding police-related television shows and stated that seeing police officers makes him anxious.

After reviewing Freestone's records and meeting with Freestone three separate times, the Medical Board doctor determined the following: (1) Freestone suffered from PTSD and major depression; (2) Freestone was unable to perform the full and unrestricted duties of a police officer; (3) Freestone's inability to perform the full and unrestricted duties of a police officer was likely to be permanent; and (4) Freestone should be retired. The Medical Board doctor noted

6

that Freestone "presents with other than the typical factors" in several respects, including: (1) his sensitivity to medications; (2) he "was not comfortable in group therapy composed of first responders;" (3) Freestone discontinued EMDR therapy "because he felt it destabilized him;" and (4) Freestone was able to "maintain functionality in all areas of his current life" except for work with KCPD. The Medical Board doctor concluded her report by stating, "At this point[,] I think I must consider that [Freestone's] presentation and inability to perform the duties of a police officer are not solely related to the issues of his job but are more related to life transition components and issues of choices made."

Documents relating to the possibility of Freestone's retirement, including the Medical Board doctor's report, various treatment reports from KCPD-approved medical providers, and Freestone's fitness for duty evaluation, were forwarded to the BOPC for consideration at their next meeting. At that meeting on March 10, 2020, the BOPC unanimously approved Freestone's non-duty disability retirement, and not duty-related disability retirement.

Freestone filed a petition for review in Jackson County Circuit Court, naming the BOPC, and the Retirement System. The trial court held a two-day bench trial, at which the trial court heard from multiple witnesses, including the Medical Board doctor and Freestone, and examined over 75 exhibits. Thereafter, the trial court entered its findings of facts and conclusions of law and determined that Freestone had not met his burden to prove that any of the Respondents'

7

actions were unconstitutional, unlawful, unreasonable, arbitrary or capricious, or an abuse of discretion.

Included in the judgement was the trial court's summary of section 86.1180.1 as follows:  An officer is eligible for duty-related disability retirement where the disability is "the natural, proximate, and exclusive result of ... an occupational disease arising exclusively out of and in the course of his or her employment .... " In determining he was not eligible for duty-related disability retirement, the trial court found the Medical Board's doctor "determined that Freestone was unable to perform the full and unrestricted duties of a police officer, but that Freestone's condition was "not solely related to the issues of his job but are more related to life transition components and issues of choices made.""  The trial court concluded that the Medical Board doctor's report outlining Freestone's medical history and personal choices supported the determination that Freestone should be retired under the non-duty disability statute.

This appeal follows.

**STANDARD OF REVIEW**

The parties agree that Section 536.150 governs this case.  Section 536.150 "provides for judicial review of administrative decisions in matters that are not deemed 'contested' pursuant to [Sections] 536.100 to 536.140." *Hogan v. Bd. of Police Comm'rs of K.C.*, 337 S.W.3d 124, 128 (Mo. App. W.D. 2011).  In such a proceeding, the trial court is tasked with conducting a *de novo* review of the agency's decision to determine whether it was "'unconstitutional, unlawful,

8

unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion.'" *Id.* (quoting *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009)).

On appeal, this Court reviews the trial court's judgment rather than the administrative agency's decision. *Id.* Thus, this Court's review "'is essentially the same as for other judgments in a judge-tried case.'" *Id.* (quoting *State ex rel. Christian Health Care of Springfield, Inc. v. Mo. Dep't of Health*, 229 S.W.3d 270, 275 (Mo. App. W.D. 2007)). "Accordingly, the appellate court reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not constitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 275 (Mo. App. W.D. 2000).

## ANALYSIS

Freestone brings two points on appeal. In his first point, Freestone argues that the trial court misapplied the law because "Freestone could not have been retired under [Section 86.1200,] the non-duty disability statute given the undisputed fact that the disability that caused him to be retired arose exclusively out of his employment with the [KCPD]." In his second point, Freestone argues that the trial court's judgment is not supported by substantial evidence and is against the weight of the evidence.

The decisive issue in this appeal is the proper interpretation of Section 86.1180, the duty-related statute.  The specific language at issue is as follows:

> Any member in active service who is permanently unable to perform the full and unrestricted duties of a police officer as the natural, proximate, and exclusive result of an accident occurring within the actual performance of duty at some definite time and place or through an occupational disease arising exclusively out of and in the course of his or her employment shall be retired . . . .

Section 86.1180.1.

We have been presented with two possible interpretations of the statute.  First, both the trial court and Respondents read the duty-related statute as prescribing a two-step analysis, to-wit:

Any member in active service who

1. is permanently unable to perform the full and unrestricted duties of a police officer as the natural, proximate, and exclusive result of an accident occurring within the actual performance of duty at some definite time and place or through an occupational disease
2. arising exclusively out of and in the course of his or her employment

shall be retired[.]

Essentially, this reading of the statute requires that Freestone (1) cannot perform unrestricted, full officer duties as the natural, proximate, and exclusive result of his occupational disease, and (2) that the occupational disease arose exclusively from his police employment.  Because the Medical Board Doctor found Freestone's condition was "not solely related to the issues of his job but are more related to life transition components and issues of choices made," Respondents reason that though Freestone's inability to perform the full and unrestricted duties was the

natural, proximate, and exclusive result of his occupational disease, the occupational disease did not arise "exclusively out of" his police employment.

Freestone reads Section 86.1180 differently. He argues the duty-related statute only mandates that the officer be unable to perform as a result of one of two alternate reasons, to-wit:

> Any member in active service who is permanently unable to perform the full and unrestricted duties of a police officer
>
> [1] as the natural, proximate, and exclusive result of an accident occurring within the actual performance of duty at some definite time and place
>
> or
>
> [2] through an occupational disease arising exclusively out of and in the course of his or her employment
>
> shall be retired [.]

He reasons that if his occupational disease arose exclusively out of his police service, he is eligible for duty-related disability and the analysis is complete.

"'Courts apply certain guidelines to interpretation, sometimes called rules or canons of statutory construction, when the meaning is unclear or there is more than one possible interpretation.'" *State v. Champagne*, 561 S.W.3d 869, 872 (Mo. App. S.D. 2018) (quoting *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002)). Given the two, reasonable interpretations argued by the parties, we apply the pertinent canons of statutory construction in our analysis.

One canon of construction is the last antecedent rule, which dictates that "relative and qualitative words are to be applied only to the words or phrases

11

preceding them. The relative and qualitative words 'are not to be construed as extending to or including others more remote.'" *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 688 (Mo. banc 2010) (quoting *Norberg v. Montgomery*, 173 S.W.2d 387, 390 (1943)).

Applying the last antecedent rule to the duty-related statute supports Freestone's construction. The noun phrases at issue are "an accident" and "an occupational disease[,]" as they provide why an officer may be "permanently unable to perform the full and unrestricted duties of a police officer." Each noun phrase is immediately followed by different qualitative words. "[A]n accident" is immediately followed by the qualitative words, "occurring within the actual performance of duty at some definite time and place[.]"[2] Pursuant to the last antecedent rule, those qualitative words apply only to "an accident", the noun phrases preceding them, and are not to be construed as extending to other, more remote, words or phrases (i.e. "an occupational disease"). Likewise, the noun

---

[2] Further, the prepositional phrase "as the natural, proximate, and exclusive result" preceding "accident" also modifies by limitation the word "accident," and does not limit the word "occupational disease," as the trial court and Respondent's interpretation would require. Such a reading would unreasonably strain the statute's plain and ordinary meaning. If that were the case, it would result in an improper grammatical reading of the duty-related statute, to wit: "Any member in active service who is permanently unable to perform the full and unrestricted duties of a police officer as the natural, proximate, and exclusive result of . . . through an occupational disease arising exclusively out of and in the course of his or her employment shall be retired . . . ." Such a reading would render the word "through" unnecessary. Yet, another rule of statutory construction requires effect be given to "'every word, clause, sentence, and provision of a statute[.]'" *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 108 (Mo. App. W.D. 2008) (quoting *Civil Serv. Comm'n v. Bd. of Aldermen*, 92 S.W.3d 785, 788 (Mo. banc 2003)). Indeed, we "'presume[] that the legislature did not insert idle verbiage or superfluous language in a statute.'" *Id.* (quoting *Civil Serv. Comm'n*, 92 S.W.3d at 788).

phrase, "an occupational disease" is itself modified by qualitative words immediately following such phrase, to wit: "arising exclusively out of and in the course of his or her employment[.]" Because those qualitative words apply only to "an occupational disease," *only* the occupational disease must arise exclusively out of and in the course of an officer's employment.

Accordingly, the noun phrases "an accident" and "an occupational disease[,]" with their respective qualitative clauses, constitute two, alternate reasons as to how an officer may become permanently unable to perform the full and unrestricted duties of a police officer and is read as Freestone suggests. Further supporting the fact there are two alternate reasons is the presence of the word "or" following the qualitative words "at some definite time and place" and preceding the noun phrase "an occupational disease." "Or" "ordinarily denotes *an alternative* to the preceding phrase." *Moore v. State*, 318 S.W.3d 726, 734 (Mo. App. E.D. 2010) (emphasis added) (citation omitted). Here, an officer may "be unable to perform the full and unrestricted duties of a police officer" because of an "accident" *or* an "occupational disease," subject to the qualitative words applicable to each.

This reading of the statute is also confirmed by principles of the series-qualifier canon of statutory construction, particularly the proposition that "[t]he typical way in which syntax would suggest *no* carryover modification is that a determiner (*a, the, some,* etc.) will be repeated before the second element[.]" *Champagne*, 561 S.W.3d at 874 (alterations in original) (emphasis added). Here,

13

"an" (the indefinite article) appears in front of each of the nouns at issue, creating two separate noun phrases, "an accident" followed later by "an occupational disease" and thereby suggesting no carryover modification. Thus, the words qualifying "an accident" ("arising exclusively out of and in the course of his or her employment") have no carryover modification of "an occupational disease." Accordingly, as argued by Freestone, the language of the duty-related statute provides two alternative means by which an officer becomes permanently unable to perform the full and unrestricted duties of a police officer, either (1) as the natural, proximate, and exclusive result of *an* accident occurring within the actual performance of duty at some definite time and place, or (2) through *an* occupational disease arising exclusively out of and in the course of the officer's employment.

Moreover, this construction also achieves harmonization between the duty-related (Section 86.1180) and the non-duty related (Section 86.1200) statutes. "[W]e must consider statutes relating to the same subject together and harmonize them if possible 'to give meaning to all provisions of each.'" *Wille v. Curators of Univ. of Mo.*, 627 S.W.3d 56, 64-65 (Mo. App. E.D. 2021) (quoting *Day v. Wright Cty.*, 69 S.W.3d 485, 490 (Mo. App. S.D. 2000)). As discussed, the duty-related statute requires the inability to perform to result from either the "natural, proximate, and *exclusive* result of an accident occurring [while on] duty", or "an occupational disease arising *exclusively* out of and in the course of his or employment . . . ." (emphasis added). Conversely, the non-duty related statute

14

applies where the "injury or illness [is] *not exclusively* caused or induced by the actual performance of his or her official duties . . . ." (emphasis added). Simply put, subject to the modifiers and limitations previously discussed, Section 86.1180 allows duty-related disability when the accident or disease is *exclusively* the result of active service, while Section 86.1200 allows for non-duty retirement when the accident or disease is *not exclusively* the result of active service. Such a reading harmonizes the two police retirement statutes. By contrast, the trial court and Respondent's reading of the duty-related statute does not achieve such harmonization. For all of the above reasons, we conclude Freestone's construction of the duty-related statute is correct.

Thus, the only question left to consider is whether Freestone was "permanently unable to perform the full and unrestricted duties of a police officer . . . through an occupational disease arising exclusively out of and in the course of his . . . employment . . . ." Respondents argue that Freestone's inability to perform as a police officer is not exclusively related to his PTSD and depression and points to the Medical Board Doctor's report, which opined that Freestone's "inability to perform the duties of a police officer are not solely related to the issues of his job." For reasons explained above, it is not necessary for Freestone to demonstrate that his occupational disease was the "exclusive" or "sole" cause of his inability to perform as a police officer.

Rather, we look to the fact that there is no denial that Freestone's occupational disease arose exclusively from his employment with the KCPD. Both

parties agree that Freestone suffers from occupational diseases - PTSD and depression- and both stipulated before trial that "[Freestone]'s PTSD and depression arose exclusively from his employment with the KCPD." Further, we note that neither party disputes Freestone's inability to perform as a police officer. Indeed, the Medical Board Doctor certified such in her report, the licensed clinical social worker did not anticipate Freestone would be able to return to police work, and Freestone's fitness for duty evaluation determined he was not fit for duty. Clearly, Freestone was "permanently unable to perform the full and unrestricted duties of a police officer" through his PTSD and depression.

Further, the Medical Board Doctor also noted that the KCPD's "[e]fforts to return him to even minimal duty" caused Freestone to experience "thoughts of self-harm." Thus, the Medical Doctor concluded that "his mental condition [] is likely to be permanent and [] he should be retired." Such findings are sufficient to determine that Freestone was unable to perform the full and unrestricted duties of a police officer through his PTSD and depression. Because the parties do not dispute that Freestone's work as a police officer was the exclusive cause of his PTSD and depression, and because the evidence indicates that Freestone was unable to perform his work as police officer as a result of his PTSD and depression, Freestone is entitled to duty-related disability retirement. The trial court misapplied the law in finding otherwise.[3]

---

[3] Because our decision in Point I is dispositive, we do not address Point II.

**CONCLUSION**

The trial court misapplied the law by interpreting Section 86.1180 as requiring Freestone to demonstrate that his duty-related occupational disease was the "natural, proximate, and exclusive" cause of him being unable to perform as a police officer. Thus, the trial court's judgment is reversed and remanded for proceedings consistent with this opinion.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.